———o———

WILLIAM C. EVANS, Plaintiff in Error, vs. THE ATLANTIC AND PACIFIC RAILROAD COMPANY, Defendant in Error.

1. *Railroads—Damages—Injury to a station agent—Private crossing—Employee —Negligence—Bell, failure to ring.*—A station master to whom was given the charge and management of all the freight trains within his division, and on whom the special duty devolved of keeping the track clear of obstructions, while engaged in attending to his own personal affairs, was crossing the railway less than eighty rods from a public highway, and run over and injured by one of the trains. The engineer failed to ring the bell or sound the whistle. The court intimated that the regulation as to such signals (Wagn. Stat., 310, § 38) was designed for the benefit of persons crossing at the traveled road, and not to protect one crossing by a private path, and to apply to passengers or strangers and wayfarers, and not to employees. And the court *held*, that the station master was not merely an employee of the company, but, being its agent, having superintendence of the freight trains, he could not hold the company responsible for the negligence of the engineer in failing to sound the bell or whistle; that if he was not at the time acting as such agent, he was failing in his duty, and could not make his negligence the foundation of a recovery.

*Error to St. Louis Circuit Court.*

*Thomas C. Fletcher*, for Plaintiff in Error.

The rule exempting the master from damages for injury to the servant by reason of negligence of a fellow-servant, applies only to those who are strictly fellow-servants in the same department of service, and not where the departments are so far independent as to have no privity with each other. (4 Metc., 59.)

The Rohback case, (43 Mo., 187) is inapplicable here. His business was on the track, and he accepted the employment with the attendant risks as a track repairer. Evans was not paid for any risks, and his acceptance of them cannot be implied from the contract of his employment. As a wayfarer his presence on the track was not connected with the relation of master and servant, and he would therefore be entitled to maintain his action. (Gillshannon vs. Stony Brook R. R. Co., 10 Cush., 231; Fort vs. U. P. R. R., 2 Dill. C. C., 263; Albro vs. Agarvam Canal Co., 6 Cush., 76.) Were the case otherwise, the liability of the company would not be altered, since his injury was the immediate result of a violation of law on its part, in failing to ring the bell and sound the whistle.

It cannot avoid its responsibility even to an employee under such circumstances, where the injury results from personal negligence and the violation of an express statute. (24 N. Y., 413; 6 Ky., 579; 46 Mo., 170; 59 Penn. St., 239.)

*J. N. Litton*, for Respondent.

The plaintiff and the engineer were fellow-servants, because they were both engaged in the common labor of transporting freight to and from that station. The same officers employed and were authorized to discharge them both. The special rules of the company made them fellow-servants. (McDermott vs. Pacific R. R., 30 Mo., 102; Wonder Railroad vs. Baltimore R. R., 32 Md., 411; Col. & Ind. R. R. vs. Arnold, 31 Ind., 174; Wilson vs. Merry, 1 House of Lords, S. & D., 326; Wright vs. N. Y. C. R. R., 25 N. Y., 562; Warner vs.

Erie R. R., 39 N. Y., 486 ; Hard vs. Vt. Cent. R. R., 32 Vt., 480 ; Beaulieu vs. Portland Co., 48 Me., 291 ; Wiggett vs. Fox, 11 Exch., 832 ; Gillshannon vs. Stony Brook R. R. Co. 10 Cush., 229 ; Chicago & Alton R. R. vs. Keefe, 47 Ill., 108 ; Boldt vs. New York Central, 18 N. Y., 432 ; Whaalan vs. Mad River & L. E. R. R., 8 Ohio St., 249 ; Foster vs. Minn. Co. R. R., 14 Minn., 360 ; Walter vs. Southeastern R. R., 9 Jur. N. S., 501 ; Morgan vs. Vale of Neath R. R. 5 B. & S., 570 ; Chicago & Alton R. R. vs. Murphy, 53 Ill., 336 ; Farwell vs. Boston & Worc. R. R., 4 Metc., 49 ; Slattery's Adm'rs vs. Toledo & Wabash R. R., 21 Ind., 81.)

The employment of plaintiff by defendant was at the time of the accident in full force and effect. The plaintiff was employed by the month and not by the day. The plaintiff had no special hours of service, nor could he claim that his labors for the day were over. In fact he ought to have been on the ground superintending the switching and fastening the switch as required by the rules. And it was incidental to plaintiff's occupation to go to and from his place of labor, and in doing so, to run the hazard of being injured by passing trains. (Shearm. & Redf. Negl., 112, § 88 ; Farwell vs. Boston & Worcester R. R., *supra ;* Higgins vs. Han. & St. Joe R. R., 36 Mo., 432 ; Tunney vs. The Midland Railw. Co., L. R. 1 C. P., 29 ; Bryden vs. Stewart, 2 McQueen, H. L. Cas., 30 S. P. Patterson vs. Wallace, 1 McQueen, H. L. Cas., 748 ; Gillshannon vs. Stony Brook R. R., 10 Cush., 228 ; Gilman vs. Eastern R. R., 10 Allen, 224 ; Denver vs. Boston R. R., 14 Gray, 466 ; Moss vs. Johnson, 22 Ill., 633 ; Ohio & Miss. R. R. vs. Tindall, 13 Ind., 367 ; Boldt vs. N. Y. Central R. R., 18 N. Y., 432 ; Russell vs. Hudson River R. R., 17 N. Y., 134 ; Ryan vs. Cumberland and Valley R. R., 23 Penn. St., 384 ; Shearm. & Redf. Negl., 134, § 109.)

The plaintiff was not within the provisions of section 38, because the crossing or pathway at the western end of the depot, in the line of which he was standing at the time of the accident, was not a " traveled public road or street," and he was three hundred feet west of the crossing east of the depot, which was a country road. (See 6 R. I., 212 ; 42 N. Y., 468.)

NAPTON, Judge, delivered the opinion of the court.

The petition in this case alleged that on or about the 27th of September, 1872, between three and four o'clock. P. M., the plaintiff was crossing the track of defendant where the same was laid along and across a public street in the town of Cuba, in the county of Crawford, and at a point on said track, within 80 rods from the place where said railroad crossed a traveled public street of said town, and at a point within the limits of said town, less than 80 rods from the place where said railroad crossed a certain traveled public road and street of said town, and while crossing said track, the defendant, by carelessness, negligence, etc., and by their neglect to observe the requirements and regulations in such cases made by the statute, and by their unlawful neglect to ring the bell at a distance of at least 80 rods from the place where said railroad crossed said traveled road, or to sound a steam whistle, etc., contrary to the provisions of the 38th section of the General Statutes, ch. 63, unlawfully and wrongfully ran a car against the said plaintiff and knocked him down, etc., and injured him so as to require amputation of his leg, by which, etc.

The answer denies, that the point where plaintiff was crossing was a public street; denies that the place was within 80 rods of a traveled highway; denies negligence; denies the failure to ring the bell as charged; in short, denies all the allegations of the petition, and asserts that plaintiff proximately contributed to the injury received, and that he was a station agent, and a servant or agent of defendant.

The replication admits that plaintiff was station agent, but alleges that this business only occupied a few hours of his time, and that, at the time of the injury complained of, he was not acting in that capacity, and was attending to his own private business, and denies that he contributed to the injury received.

At the trial, the plaintiff testified that he lived at Cuba ; that he was struck by a railroad car, on the 28th of Septem-

ber, 1873, at Cuba; that the wheel of the car passed over his leg. He had been across the track to get his mail at the post-office; did not see the cars approaching, nor hear them, and was struck by a freight train. This train was the one which hauled all the freight that was shipped at the station or to the station. He had at the time of the accident just left the depot and had crossed the track to go to the post office, and was returning to his house (which was on the same side of the track as the depot) to get his dinner, when he was struck. He did not look to see whether any cars were approaching when he stepped on the track. He stepped on the track right in front of the cars. The men on the train could not see him; the cars were moving slowly. He jumped on the track on which the train was, from behind a box car standing on the side track.

This witness stated further, that there were two principal crossings of the road in the town of Cuba, one on the east, and one on the west of the depot. He was struck by the cars in crossing the western one. No bell was rung nor whistle sounded. The place where he was struck is called a street and it was sixty feet wide, and more people who came to the depot, came over that place than any other crossing.

It is impassable for wagons, being five or six feet below the surface, and a wagon could not cross there. People on horseback would cross there. The crossing had never been worked. The road crossing the track east of the depot is a county road, the two crossings being about 260 feet apart. The eastern crossing was used by wagons.

This witness was at the station when the local freight train arrived, and remained there until he saw the engine, and some cars go on west. He thought the whole train had gone and then went from the depot to the post office. But the witness learned afterwards that the whole train had not left, and most of the cars remained at the station, and the engine took these cars out of the train and went west up to the "frog" for the purpose of leaving two of them at the stock yard, for some stock that was to be shipped at Cuba. The plaintiff

had ordered the cars to be brought from Franklin for this stock. The engine had left these two cars on the side track and was backing down with one box car on the main track, to couple on to the rest of the train which remained east of the depot, when plaintiff was struck. This witness, who is plaintiff, jumped on the main track from the side track, from behind one of these cars left there. The engine and some of the cars he had seen go on westward before he left the station and thought that the whole train had gone on. The engine and train that struck him was backing down and going eastward.

This witness was station agent at Cuba. The duties occupied only a part of his time. His salary was forty dollars per month. He was general agent of defendant at that point. He was defendant's agent for the sale of land at that point. He had no other regular business except station agent or land agent.

The attention of the witness was then called to certain rules of the company, which he conceded had been received by him. These were:

"No. 10. Switchmen and station agents will be held strictly accountable for the position of their switches, and must keep them locked on the main line, unless they are standing by the switch."

"No. 27. While waiting at the stations, conductors do such switching as may be reasonably required by station agents."

"No. 38. It is the duty of the conductor to report with his way bill and endorse thereon the names of all station agents who are absent from their offices, or who do not keep the same open at the time of the passing of passenger trains."

"No. 52. All station agents are required to be at their offices and keep the same open for the sale of tickets, thirty minutes previous to the usual and regular time for the passage of passenger trains, and until passenger trains have passed."

"No. 53. Station agents must not in any case deliver freight to anyone until the charges upon the same have been paid

Agents receiving articles of freight, which have been damaged from any cause while in the possession of the company, must immediately report the same to the general freight agent."

"No. 54. Station agents will be held responsible for the position and security of the switches.

"No. 55. Station agents must use every means in their power, with men employed at their station, to aid in the speedy passage of trains. Conductors will promptly report any neglect or inattention on the part of agents or others, whose duty it is to aid in the passage of trains. Promptness in doing work at stations is enjoined upon all, in order to enable trains to use as much of their time as possible in running between stations."

"No. 56. Station agents will see that all cars on side tracks at their respective stations are so placed as to be clear from trains passing on the main track, and that they are so secured that they cannot be blown out on the main line."

No. 58. (This is in regard to way bills.)

"No. 69. Agents having cars at their stations loaded and ready for trains, will notify conductor of first train to take them, etc."

"No. 71. All persons employed upon the road must give timely notice of any obstruction to the passing of a train, by exhibiting a red flag, or swinging a hat by day and a light by night, at least 120 rods distant in each direction. They will also notice all passing trains, and, when seeing a flag or other signal upon the front of an engine, must keep the main track clear, etc., etc."

"No. 73. In case of accident or delay of trains, the conductor may command the services of all persons connected with the road, etc."

This witness announced that these were the rules, but that he was not engaged in performing any of the duties called for by these rules when he received the injury. There were two passenger trains due at that station at 1:20 P. M., at the same time this local freight train, by which he was hurt, was

due there. A freight train was due there at 8:43 A. M. The express passenger train stopped there at 10:22 P. M. There was another passenger train which stopped there at 4:23 A. M., a freight train at 9:17 A. M., and another at 5:16 A. M. It was his duty to see that all freight received by the company for shipment was duly shipped.

The plaintiff then called L. H. Lewis, who stated that he saw the car run upon plaintiff. It was at a place which was an open general thoroughfare for foot passengers, used almost invariably by persons on foot passing from one part of the town to another. The town is about equally divided by the railroad passing through it. The population is 1000 or 1200. The crossing where plaintiff was struck is used by persons on foot, and sometimes by those on horseback. The witness did not hear any bell rung on the locomotive, or whistle sounded, at or near the time of striking plaintiff. The witness was in a position to have heard such bell or whistle, if either had been sounded. Plaintiff was coming from the post office and going towards his residence. The place where plaintiff was struck was on the main track, at the crossing heretofore described. Wagons could not cross there.

And then witness stated that he was at the depot when plaintiff was struck; that there was no bell rung or whistle blown.

The above evidence has been almost literally copied from the bill of exceptions, because the court instructed that upon it the plaintiff could not recover, and therefore, it becomes important to set it out in detail. And the giving of this instruction presents the only point in the case.

It will be readily conceded by anyone who has had occasion to examine the adjudications in this country, or in England, that the liability of a master to a servant for an injury occasioned by the negligence of a fellow-servant, involves questions extremely difficult of solution, and upon the solution of which, courts of the highest authority have differed.

What constitutes a fellow-service, is a point upon which the authorities are not agreed.

We have, however, in this case only to determine whether the position of plaintiff, as station agent of defendant, under the regulations prescribing his duties, constituted him a fellow-servant of the managers of the freight train, by which he was injured. He was, as the evidence shows, and the regulations show, not merely their fellow-servant, but had entire control over them. He was, or ought to have been, in the actual performance of his duties as station agent, when the accident occurred. He neglected the duties devolved on him by defendant, as he states, and whilst so neglecting them, the injury happened; and he claims, that by reason of his neglect of duty, and therefore, being not in the line of his employment at the exact time of the accident, he is not subject to the rule, that one servant is responsible for the negligence of his fellow. The plaintiff claims that he was not acting as station agent at the time he was injured. He concedes he was such agent, and the regulations show that his business was to see to the freight trains, and that the main track was kept clear of obstructions. In short, under the regulations which he is conceded to have received, he had the entire control of the freight train by which he was injured. He was not so much a fellow-servant, as a superior, who had the right of control, and by failing to exercise this control, he was injured.

The plaintiff bases his claim chiefly upon the exaction of the duty imposed on the company to have the bell sounded or the whistle blown on or near a public highway, which he was not crossing. The object of this statute is manifestly to protect persons passing on the road or highway; but the plaintiff was crossing the said road on a foot path, with which he was doubtless familiar, perhaps within the distance from the highway named in the statute. That the failure to ring the bell or sound the whistle, was negligence, is clear, but the question is whether this negligence gives any right of action to the plaintiff. It is not material in this case, whether such failure would confer upon a passenger on the highway a right of action for the neglect, nor indeed is it material

whether it would confer upon a stranger or wayfarer such right whilst at a point on the road where the highway or street did not cross. But the cases of Harty vs. Cent. R. R. Co., (42 N. Y., 469), and O'Donnell vs. Prov. & W. R. R. Co., (6 R. I., 211), and The People vs. N. Y. Cent. R. R., (15 Barb., 199) lead to the conclusion upon similar enactments, that the protection designed was for the benefit of persons crossing at the traveled road. The same conclusion was reached in regard to the construction of our own statute. (Rohback's case, 43 Mo., 187.)

It is not pretended that the plaintiff was traveling the highway or any street, in the town where the railway crossed, but that he was on the road within the distance of 80 rods from such public crossing.

In this case, the plaintiff having charge of the train which inflicted the injury upon him, was clearly not entitled to the protection provided for by this law. His duty required him to be at the place where this train could be controlled. That the failure to ring the bell as required by the statute, was negligence, is decided in the case of Karle vs. K. C., St. J. & C. B. R. R. (55 Mo., 483); but that this negligence entitled the plaintiff to recover, was another question, depending on his position in regard to the road. In the case cited, the plaintiff was killed at the crossing of a street by the railroad, where he was crossing as a mere wayfarer, and had no connexion whatever with the road. In the present case, the plaintiff, on his own showing, was an employee of the road, especially entrusted with the control of the train by which he was injured. He not merely neglected his duty under the regulations which he admitted to have received, but he recklessly placed himself in front of the locomotive which struck him, at a time and place, where, according to his own statement, no amount of care on the part of the engineer could have prevented the accident. He stepped from behind a car, right in front of a locomotive which was slowly passing, to take up some cars belonging to the freight train, not on a public highway, but on a path leading from the depot, across

the railroad, traveled by foot passengers, without looking either way to see whether cars were passing. Upon the question of contributory negligence alone, it might be held, that he had no right of action. But without passing on this point, it is clear that, being an agent of the company, and required by the regulations to superintend the freight trains, he could not hold the company responsible for any negligence of the servants of the company, who were subject to his orders. He was, as station agent, especially entrusted with the duty of attending to freight trains ; to see that they were loaded and unloaded, and to see that they were properly secured on the side track or switches. That because he was neglecting this duty at the time the accident happened, he is entitled to claim the rights of a stranger, is too monstrous a proposition to be conceded. The liabilities of the company depend on his rights as an employee. His employment, as is conceded, involved the control of the train by which he was injured, and this concession alone exempts the defendant, and the court, therefore, properly gave the instruction complained of.

Judgment affirmed. The other judges concur, except Judges Vories and Hough, who are absent.