JAMES T. WASSON, Respondent, v. JOHN J. McCOOK et al., Appellants.

. St. Louis Court of Appeals, May 9, 1899.

**Common Carriers**: DAMAGES: KILLING STOCK: CROSSINGS. The statute is designed for the protection of persons and domestic animals passing over or about to pass over a public crossing when trains are approaching, and damages for failure to give the signals are given for injuries resulting therefrom which are inflicted at the crossing, and not damages generally, which may accrue to cattle running at large that come upon the track other than at public crossings and are injured. Held, that the place where the animal got upon the track, not where killed, fixes the liability.

*Appeal from the Newton Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED.

L. F. PARKER and J. T. WOODRUFF for appellants.

As was well said by Judge Bond when this case was here before "the law applicable to the cause of action and facts shown in this record is simple and well settled. It is not brought under the statutes (R. S., 2611-4428) giving double or single damages for injuries to stock. It is therefore necessary, in order to recover, for the plaintiff to show that the actual negligence of the defendant caused the killing of the cow. Wallace v. Railroad, 74 Mo. loc. cit. 597." Wasson v. McCook, 70 Mo. App. 393. In order to show negligence, since to recover he must do so, the plaintiff contends: That the bell was not rung or the whistle sounded. That the engineer could have seen the cow's situation of danger but did not, and could have stopped the train in time to avoid the injury. In addition to proving these grounds of negligence or one of them, it is incumbent upon the plaintiff to go further

and show that they or the one proven was the cause
of the injury, and if he fails to do this he can not
recover. Stoneman v. Railroad, 58 Mo. 503; Vannote
v. Railroad, 70 Mo. 641; Wasson v. McCook, 70 Mo.
App. 393. And lastly, could the engineer have stopped?
The plaintiff's witness, Martin, says the cow ran upon
the track when the engine was within forty feet of her.
The plaintiff says he looked up when the train whistled and the
cow was just on the track less than fifty feet from the engine,
but that the engineer struck her before he could think of it.
The engineer says, "at the moment that I saw the cow going
to cross the track I tried to stop. I applied the air, but I saw
all appliances of stopping could not prevent striking the cow.
We had eighteen cars of cattle; was running from fifteen to
twenty miles per hour. Such a train can not be stopped in
from thirty to fifty feet. It would have been impossible to
have stopped the train in time to have avoided striking the
cow." There is not the least evidence contradicting the
engineer's statement. Indeed it can not be denied. Boyd v.
Railroad, 105 Mo. Rep. 371; Fenton v. Railroad, 26 N. E.
Rep. 967; Young v. Railroad, 79 Mo. 336; Caster v. Railroad,
65 Mo. App. 359; Railroad v. Mitchell, 33 S. W. Rep. 622.

Hugh Dabbs and L. W. White for respondent.

Under the general allegation of negligence in the
plaintiff's petition, the plaintiff could succeed by proving neg-
ligence at common law, or by proving the constructive statu-
tory negligence. Negligence may consist of any number of
negligent acts. Hill v. Railroad, 49 Mo. App. 520; s. c., 121
Mo. 477. The evidence shows that the bell was not rung or
the whistle sounded as required by the statutes. The testi-
mony of defendant's witnesses on this point is not from
memory, but from habit. The signals required by statute,
ringing the bell and sounding the whistle, were not the only
duties imposed on the defendant under the circumstances of

this case.   This was a place where the company was not required to fence, but at a place where people and stock were continually passing and repassing, and where stock was liable to stray upon the track, and where the engineer in charge had reason to and was required to apprehend and anticipate the presence of cattle on the track at said point, and it was the duty of the engineer in charge to exercise ordinary care and prudence, if not the greatest diligence, watchfulness and care. Burger v. Railroad, 112 Mo. 238-246. It will be noted that the Wallace case, *supra* (cited by appellants), has been qualified and explained.   Kendig v. Railroad, 79 Mo. 208; Hill v. Railroad, 49 Mo. App. 532; Averill v. Santa Fe Receivers, 72 Mo. App. 245, 246.   Rate of speed, negligence when:   While no rate of speed is negligence *per se*, yet the speed, even where there is no law or ordinance regulating the speed in evidence, at which a train is run over a crossing may be such as to be negligence under the circumstances, as a matter of fact, and this is a question for the jury on the facts of each case.   Bell v. Railroad, 72 Mo. 54, 61; Frick v. Railroad, 75 Mo. 612; Pryor v. Railroad, 69 Mo. 217, 218; Campbell v. Railroad, 59 Mo. App. 151.

BLAND, P. J.—This case was here on appeal by defendants at the March term, 1897, when it was reversed and remanded (70 Mo. App. 395).   On retrial plaintiff again recovered a judgment, from which defendants appealed.

The charging part of the complaint is as follows:   "That on the 2d day of September, 1895, in said Van Buren township, the defendants by their agents and servants while running its engines and cars upon the said railroad did negligently, wantonly, carelessly, run over, strike, maim and kill, to wit, one cow, of the value of fifty dollars, to plaintiff's damage in the sum of fifty dollars, for which plaintiff asks judgment and for his costs."   The cow was killed in the town of Ritchie on the line of the St. Louis & San Francisco Railroad and within

the switch limits in said town and at a point where the road is not fenced and where the defendants were not required to maintain a fence. The town of Ritchie at the date of the accident had from two hundred and fifty to three hundred inhabitants and was located on the north side of the railroad track, which ran east and west at that point. On the south side of the track was located a mill and elevator. A highway leading from the town to the mill and points south, crossed the track near the station house which was built between the main and switch track. There was but the one public road crossing at Ritchie, and from the evidence it was very much used by teamsters to reach the mill and elevator from the north and by people traveling south. McDonell Martin, a witness called by the plaintiff, and the only witness who saw and testified to the position of the cow, relative to the track and train just before and at the time of the accident, states, in substance, that he was walking from the town to the mill, where he worked; that about the time he stepped on the track he heard the engine whistle for the station, looked and saw the train coming from the west over a quarter of a mile away; that a couple of yearlings were on the track; these he drove off; at the same time he saw plaintiff's cow feeding along near the track, "but had no idea that she would go on the track," and did not drive her away, but when the train got within forty or fifty feet of where she was feeding, she came onto the track and he tried to drive her off, but found he could not do so without exposing himself to danger; that just as she got on the track the engine whistled to scare her off, but instead of jumping off she turned up the track and ran east from thirty to forty feet, where she was caught by the engine and carried some distance and thrown off. Plaintiff testified that he did not see his cow go on the track, but saw her as she ran up the track toward the crossing, and that she was struck and thrown off at the crossing. Other witnesses for plaintiff saw the cow after she was struck by the engine and before she was thrown

off, all of whom testified that the cow was carried some distance on the pilot of the engine before she was thrown off and killed. The evidence for both parties establishes the fact that the engineer whistled for the station one half a mile away, and again sounded the whistle just before the cow was struck. The evidence of the engineer and fireman is that the required statutory signals, when approaching a public crossing, were given. The evidence for plaintiff and his witnesses on this point was of a negative character, the witnesses stating that if the signals were given, they did not observe them, or had forgotten them. The evidence is that the engineer could have seen the cow from a quarter to a half of mile west of Ritchie, and that the train was running at a speed of from twenty-five to thirty miles per hour, and that it did not stop at Ritchie; that the train was a heavy one and made up of car loads of live stock, and it is conceded that it was physically impossible to have stopped or checked the train and prevented the injury within the distance the cow was of the train when she went onto the track. At the close of all the evidence the defendants moved the court to instruct the jury that under all the evidence the plaintiff could not recover; this instruction was refused. As was said by this court when the case was here on former appeal: "The action is for common law negligence. It is not brought under the statutes (R. S. 1889, secs. 2611-4428), giving double or single damages for injuries to stock. It is therefore necessary, in order to recover, for plaintiff to show that the actual negligence of the defendant caused the killing of the cow." To the same effect is Turner v. Railroad, 76 Mo. 261. "The omission to discharge any duty imposed by law upon common carriers, in the management of their vehicles, in transporting persons or property, is evidence of negligence," says the supreme court; Goodwin v. Railroad, 75 Mo. 73; and "the fact that a railroad company's trainmen failed to ring a bell or sound the whistle as the train approached the crossing of a public road, may be given in

evidence in a common law action against the company for negligently killing plaintiff's steer at the crossing, without being especially pleaded." Braxton v. Railroad, 77 Mo. 455. If, therefore, the plaintiff's cow was killed at the crossing and neither of the statutory signals were given as the train approached the crossing and the killing resulted from such failure, then there was evidence of negligence, which it was proper to submit to the jury. Alexander v. Railroad, 76 Mo. 494; Holman v. Railroad, 62 Mo. 562; Wallace v. Railroad, 74 Mo. 594. But there is nothing shown in this case, but a possible omission of the duty to give the signals and the injury; this is not sufficient to make out a *prima facie* case for the plaintiff. Stoneman v. Railroad, 58 Mo. 503; Barr v. Railroad, 30 Mo. App. 248; Alexander v. Railroad, and Homan v. Railroad, *supra*.

The evidence is undisputed that the cow did not go on the track at the crossing, and it is clear from all the evidence that she was not on the track at the crossing when she was overtaken and thrown onto the pilot of the engine. She was not at the crossing when the collision of the engine with her occurred; she did not undertake to pass over the track at the crossing; therefore the obligation to give the statutory signals did not apply to her situation. The statute is designed for the protection of persons and domestic animals passing over or about to pass over a public crossing when trains are approaching, and damages for failure to give the signals are given for injuries resulting therefrom which are inflicted at the crossing, and not damages generally which may accrue LIABILITY fixed. to cattle running at large that come upon the track at points other than at public crossings and are injured; the place where the animal got on the track, not where killed fixes the liability. Moore v. Railroad, 81 Mo. 499; Snider v. Railroad, 73 Mo. 465; Fraysher v. Railroad, 66 Mo. App. 573; Ehret v. Railroad, 20 Mo. App. 251; Brassfield v. Patton, 32 Mo. App. 572.

Wasson v. McCook.

The evidence is uncontradicted that it was impossible to have stopped the train in time to have prevented the injury after the cow got on the track, and to establish actual negligence it must be assumed that the cow was in a perilous condition before she went upon the track, and that the engineer saw, or by the exercise of due care could have seen, her peril in time to have stopped the train and avoided the injury; but there is not a ray of proof to support such an assumption.  If Miller who stood within twenty feet of the cow and saw her grazing along the right of way had no "idea" that the cow would go upon the track, until she was on it, how can it be inferred that the engineer, on a swiftly speeding engine which he was running, with the duty to look ahead and to closely observe the track to see if it was clear and at a much further distance from the cow than Miller, saw, or could by the exercise of ordinary diligence have seen, a peril that Miller from his more advantageous situation failed to see, or even to perceive sufficient evidences of to arouse his bare suspicion that peril was present.  According to the evidence the cow was feeding close to the track parallel with the track not approaching it; her situation was not one which would compel her to come upon the track, nor was there anything in her movements that indicated that she would presently go upon the track.  In such circumstances the engineer was not required to slacken his speed or to stop his train to await the movements of the cow.  Young v. Railroad, 79 Mo. 366; Boyd v. Railroad, 105 Mo. 372; Grant v. Railroad, 25 Mo. App. 227; Milburn v. Railroad, 21 Mo. App. 426.

It is contended that the train was run at a reckless or negligent speed.  In the absence of a statute (and we have none in this state), regulating the speed at which trains may be run, no rate of speed at which they are run SPEED: negligence· is negligence *per se*.  Powell v. Railroad, 76 Mo. 80; Maher v. Railroad, 64 Mo. 267; Morris v. Railroad, 79 Mo. 366.  Whether the train in this

instance was run at a reckless or negligent rate of speed, was a question of fact to be made out by the evidence and found by the jury, but the jury were not instructed on this point, and therefore did not pass on it, and the question is not in the record; but as some point seems to be made of it we will give our views of the subject. There was some evidence, tending in a slight degree, to prove that on account of the almost constant use of the crossing by the public at the time of day the train passes, the rate of speed was negligent and had the injury occurred at the crossing an instruction on this theory might have been proper, but the rate of speed under the facts in the case was immaterial, for it is well known from observation that a heavy freight train could not be stopped in a space of forty or fifty feet, if running even at a moderate rate of speed, and as we have seen there was no duty on the part of the engineer to make an effort to stop the train until the cow was in a condition of peril; this did not occur until she walked on the track, only forty or fifty feet ahead of the engine. On no theory of law applicable to the facts can the plaintiff recover, and we reverse the judgment.    Judge Bond concurs; Judge Biggs dissents.

### DISSENTING OPINION BY JUDGE BIGGS.

If the facts were correctly stated in the opinion of my associates I would be content to be marked merely as dissenting.    Judges often differ as to the law or as to its application, but they ought not to differ about the facts.    Judge Bland in his opinion says, "it is clear from all the evidence that she (the cow) was not on the track at the crossing when she was overtaken and thrown onto the pilot on the engine.    She was not at the crossing when the collision of the engine with her occurred.    She did not undertake to pass over the track at the crossing."    The plaintiff was within one hundred feet of the cow and saw the engine strike her.    He testified.    Q.

"Now this cow was killed within the switch limits there, wasn't she?" A. "Yes, sir, right on the crossing right west of the depot." (Page 45 transcript.) M. D. Martin testified that the cow came upon the track about forty or fifty feet west of the crossing and that previous to that she had been grazing along the south side of the track and was going towards the crossing and that when the train was within a short distance from her she ran upon the track. Concerning the collision he testified as follows: "As soon as the cow walked on the track I hollored at her, and just as she got her fore feet over the north rail then—I will tell it so you will understand it—then he whistled at her and she turned right around and turned right up the track, and he caught her just as she got to the west side of the crossing and went to turn off—he caught her with his engine." The engineer in charge of the locomotive testified on cross-examination (page 90 transcript). "Q. You say she (cow) was right by the side of the track when you saw her? A. She came across the side track, yes, sir." Q. "Right there at the crossing. A. Somewhere near the crossing. I suppose it was on the crossing." If there is any other evidence in the record concerning the place of the collision, I have been unable to find it. I say there is none. Therefore we have the plaintiff and the engineer, who testified that the cow came upon the main track at the crossing and was there struck, and Martin testified that she came upon the track about fifty feet west of the crossing; that she ran down the track to the highway and was there struck just as she attempted to leave the track. Thus all of the witnesses agree that the collision occurred on the crossing. Therefore the reasoning of my associates based on this erroneous statement of the evidence must go for nothing.

The contention is that the uncontradicted evidence shows that the cow was not in apparent danger until she came upon the track in front of the train; that at that time the engine was only about fifty feet from her, and was running at full

speed, and that it was impossible to stop the train within that distance so as to avoid the injury. On this subject the evidence tended to prove these facts: The cow was killed at a public crossing at the town of Ritchie. The train was approaching the town from the west. For a distance of one-half mile west of the crossing the ground is perfectly level and there are no obstructions on either side of the track for that distance. The town is situated on the north side of the railroad track. There is a mill and an elevator on the south side. The road where the cow was killed runs south from the town and crosses the main and sidetracks on the railroad about fifty feet north of the depot and within the switch limits. It is the only highway across the railroad within the limits of the town. After the train in question had come in sight of the crossing two other cattle that were on the south side of the railroad about fifty feet west of the crossing, came upon the track and were driven off by one of the witnesses. At the same time and place as one witness testified the plaintiff's cow was walking east on the south side of the track and near to it and when the engine was fifty or sixty feet from her she ran upon the track in front of it and when the whistle was sounded she then ran east along the track and just as she was leaving it at the crossing the engine struck and killed her. According to the weight of the evidence the train was running about thirty miles an hour. The evidence also shows without contradiction that from the time the train came in sight of the crossing no attempt was made to slacken the speed of the train, until the cow came upon the track, but on the contrary plaintiff testified that when the cow came upon the track the speed of the train was increased. Under these facts the ruling of this court and the supreme court in the case of Hill v. Railroad, 49 Mo. App. 520; 121 Mo. 477, is applicable. It was held in that case that at places where a railroad is not fenced and where animals are liable to stray upon the track, it is the duty of the servants of the railroad company operating a train

to keep a reasonable lookout for live stock, and if animals are killed and persons running the train, by the exercise of ordinary watchfulness, could have discovered the animals in time to avoid injuring them, the company is liable. In the case at bar there is no question under the evidence that the engineer, if he had looked, could have seen the plaintiff's cow near the railroad track in ample time to have slackened the speed of the train and thereby have prevented the accident. But it is urged that under the foregoing decisions an engineer is not required to slacken the speed of the train whenever and wherever he may see cattle grazing or walking near the railroad track. In other words, that the danger of collision must be apparent before he is required to put his train under control. This argument might count for something under some circumstances, but it is not good under the facts of this case for the reason that the circumstances in evidence tended to show that there was a likelihood of plaintiff's cow attempting to cross the track, which might have been known to the engineer if he had been attentive to his business. Assuming that the engineer was keeping a proper lookout, he must have seen the other cattle come upon the track from the south side at the same point where plaintiff's cow was walking, and that they were driven off the tracks on to the north side. At the same time he must have seen plaintiff's cow. He knew that the cow was liable to follow her companions, especially as the cow belonged to the town, was near a crossing, and would likely attempt to go towards her home. Under these conditions I think that the engineer, as a reasonably prudent man, ought to have put his train under control. If he had done so the evidence shows that the cow would not have been killed, or if he had not increased the speed of his train she would not have been killed.

It is also urged that the evidence was not sufficient to establish constructive or statutory negligence, that is a failure to ring the bell or sound the whistle in approaching the cross-

ing. The evidence is uncontradicted that the engineer sounded the whistle eighty rods from the crossing and that he did not sound it again until within one hundred feet of the crossing. Concerning the ringing of the bell, four or five witnesses who were introduced by plaintiff, testified that they did not hear the bell, and that they were close enough to hear it if it had been rung. The engineer testified positively that the bell was rung, and the fireman testified that as he invariably rang the bell in approaching a crossing he thought he was justified in stating that he rang the bell on the occasion in question. He could not remember it as a fact. It is objected that the plaintiff's evidence is of a negative character and that it ought not to have any weight against the positive proof of the defendant. I can not agree to this. The proof of failure to give the statutory signals is necessarily negative. Such evidence might under certain circumstances be worthless, but not so in this case. The plaintiff's witnesses were in full view of the train; they were sufficiently near to hear the bell if it had been rung, and their attention at the time was directed to the accident. I have gone through the record carefully, and can see no reason for· disturbing the judgment, and therefore dissent from the conclusion reached by a majority of the court. Unquestionably the case was retried in conformity with our former rulings.

NEGLIGENCE.

#### SUPPLEMENTAL OPINION OF JUDGE BLAND.

Judge Biggs has filed a dissenting opinion, which we saw for the first time in the clerk's office, and in which he charges that the facts are incorrectly stated in the majority opinion, delivered after a rehearing had been granted. To refute this charge is the apology I have to offer for filing this supplemental opinion.

Judge Biggs remarks in his dissenting opinion that "judges often differ as to the law or its application, but they ought not to differ about the facts." If Judge Biggs had

called the attention of either of his associates to the fact that the majority opinion misstated a material controlling fact in the case, instead of keeping this supposed fact hidden in his breast until he had prepared and handed down his dissenting opinion, he might have been saved the labor of writing that opinion. It seems to the writer that common courtesy to his associates would have prompted Judge Biggs, and that official duty required of him the use of some other method of communicating his baleful discovery other than through the clerk's office by the medium of a dissenting opinion, and given his associates the opportunity to correct their statement of facts if found incorrect.

In the majority opinion it is stated as a fact that the evidence shows that the cow did not come upon the track at the crossing. Judge Biggs in his dissenting opinion says: "Therefore we have the plaintiff and the engineer who testified that the cow came upon the main track at the crossing and was there struck." The engineer did testify that the cow came upon the track somewhere near the crossing, and that he supposed it was at the crossing. The plaintiff testified that when he first saw his cow "she was on the track and he saw they were going to hit her," and that "they did hit her and carried and threw her off north of the depot; that the cow was hit west of the depot;" that the cow was on the track when he first saw her. The plaintiff does not pretend to state where the cow came on the track, and there is not a word in his testimony anywhere to warrant the assertion that "we have it from his testimony that the cow came upon the main track at the crossing." It was a guess with the engineer as to the place where the cow came upon the track, a mere impression that she came on the track near or at the crossing. On the other hand Martin, the only witness who saw the cow go on the track, and who tried to drive her off, and was in a position to see, and who testified to all the facts as they occurred, stated that the cow "came on the track on the east side of the

culvert in 3 or 4 feet or closer to the culvert," and about fifty feet west of the crossing; that she turned up the track (not side track) and ran up the track and was caught, carried some distance and thrown off north of the depot. The plaintiff testified that they caught her, took her up, and carried her right north of the depot, "and threw her off up there." Young, a witness for plaintiff, stated that the first he saw of the cow she was being carried on the pilot of the engine. So "we have it" from plaintiff's principal witness, Martin, that the cow went on the main track near the east side of a culvert and about fifty feet west of the crossing, and this witness is corroborated by the plaintiff and by the plaintiff's other witness, Young, as to what occurred after the cow had come upon the track; and there is no testimony in the record contradicting or qualifying the statement of Martin that the cow did not go on the track at the crossing. Judge Biggs in his meandering in the shades and shadows of the record got sight of the substances and tacitly admits that the cow did not go on the track at the crossing, as appears from the following paragraph taken from his dissenting opinion, to wit: "Two other cattle that were on the south side of the railroad about fifty feet west of the crossing came upon the track and were driven off by one of the witnesses. At the same time and place the plaintiff's cow was walking east on the south side of the track and went on it, and when the engine was fifty or sixty feet from her she ran upon the track in front of it and when the whistle was sounded she then ran east along the track (witnesses say on it) and just as she was leaving it at the crossing the engine struck her." Hence we have it from Judge Biggs that the cow got on the track fifty or sixty feet west of the crossing, ran on the track to the crossing, where she was struck by the engine. Hence "we have it" from the witnesses for plaintiff, and from the dissenting opinion as well, that the cow did not go on the track at the crossing. Further comment or quotation from the record is unnecessary to vindicate the correctness

Wasson v. McCook.

of the statement of the majority opinion that the record shows the cow did not go on the track at the crossing, which is the controlling fact in the case, and the one upon which the majority of the opinion is bottomed.

The plaintiff testified that when the engine whistled for the cow and was within thirty or forty feet of her, the engineer increased his speed; "that the engine seemed to jump at her." Judge Biggs condemns the engineer for increasing the speed of his engine under the circumstances. It has been my experience both at the bar and on the bench, and I venture to assert the experience of the bar and of the bench generally, that in such circumstances experienced locomotive engineers, without a respectable exception, have, when called as witnesses, testified, that the prudent course for an engineer to adopt is to turn on all the steam he has and to hit the animal with all the force possible so as to either throw it clear off the track, or well on to the pilot of the engine, so as to avoid throwing the animal down on the track, where it is liable to be rolled under the engine and to ditch it and the train, and thus jeopardize the safety of the engine, the train and the lives of all on board. The train, its contents, with the lives of those on it are to be more esteemed than the value of the plaintiff's trespassing cow, and I commend the engineer in his effort to strike her hard so as to throw her clear off the track. Judge Bond concurs.

### SUPPLEMENTAL DISSENTING OPINION BY JUDGE BIGGS.

My reason for filing a dissenting opinion in this case in the first instance, was the statement in the majority opinion, to wit: "It is clear from all the evidence that she (the cow) was not on the track at the crossing when she was overtaken and thrown onto the pilot on the engine." This alleged fact was treated as of great importance by my learned associates. They have filed a supplemental opinion that is quite remarkable in some respects. They now admit that there is no

foundation in the evidence for the above statement, and they undertake to excuse themselves for their evident lack of atten-tion and work by accusing me of concealing from them the blunder they had made. If they had given the true history of the case I would have been relieved of the necessity of writing this supplemental opinion, for had the facts been given their accusation would have been completely answered. The following are the facts: The case has been to this court twice. On the first appeal (70 Mo. App. 393), Judge Bond wrote the opinion, to which I dissented. In the first draft of the opinion he reversed the judgment without remanding the cause. Afterwards the opinion was modified so as to remand. Upon the second trial the evidence was substantially the same and the case was submitted to the jury precisely as directed in the majority opinion, and the plaintiff again recovered. On the second appeal the case was assigned to me. I wrote an opinion affirming the judgment. That opinion was fully concurred in by my associates, and was filed March 21, 1899. Against my vote a motion for rehearing was sustained, and thereupon a re-submission of the case was ordered and the task of writing a second opinion was assumed by Judge Bland. The re-submission was ordered without the consent of either party. Our disagreements were so pronounced that Judge Bland, in preparing his opinion, marked me as dissenting, thereby giving me to understand that further suggestions from me would not be entertained. Under these circumstances I wrote my dissenting opinion, of which complaint is made. I had no reason to believe that the error in the majority opinion was the result of a mistake or oversight. I had read the evi-dence at least four times, and I took it for granted that my learned brothers had likewise discharged their duty. If the case had been before the court for the first time I assuredly would have called attention to the error, but I presumed, and I was justified in the presumption, that my associates had found something in the record which had escaped my atten-

tion.  They now confess that their opinion rests on a false basis of fact, and they seek to escape the force of their blunder by accusing me of bad faith or lack of courtesy.  The plain truth is that although the facts were under discussion at four different times, the case was finally disposed of without a careful reading of the record.  Litigants have the legal right to have their causes disposed of upon the records, and nothing else will or ought to satisfy them.  It will be noted that when the motion for rehearing was sustained the cause was re-submitted without the consent and in the absence of the respondent.  Such has not been the rule of practice, and in my opinion there is no warrant for it.  It is unjust in its operation. In this case the appellants filed an elaborate brief in support of the motion for rehearing, and the respondent should have been given an opportunity to reply.

#### SECOND SUPPLEMENTAL OPINION BY JUDGE BLAND.

1.  In his supplemental dissenting opinion Judge Biggs makes the statement that we admitted in our supplemental opinion that we had misstated facts in the original opinion. The reverse of his statement is true.  No such admission is made nor intimated.  On the contrary it is expressly stated and shown by quotations from the evidence, that the controlling facts in the case were correctly stated in the original opinion, as will appear from a reading of the supplemental opinion on file in the clerk's office, which is a public record, and will be published in due time in the reports.

2.  Judge Biggs also states that it has not been the practice to sustain a motion for rehearing and to take the case as re-submitted without consent and in the absence of counsel.  This statement is contradicted by the records of this court, as will appear by the record entries made in the following cases (by numbers), to wit, 6897, 7225, 7228, 7204, 7157, and in the cases of Bassett v. Grantham and State v. Goff, in each of which a motion for rehearing was granted, and

in the same order was taken as re-submitted and an opinion was
prepared and filed without further oral argument or an oppor-
tunity being given to file additional briefs.    The record shows
Judge Biggs present and agreeing to the order made in each
of these cases and as concurring in the subsequent opinions.
These records are public records and open to the inspection of
any one who wishes to be correctly informed of this practice of
the court heretofore adopted and acted on by all its members
without objection.    Judge Bond concurs.