SUSIE KERR, Respondent, v. B. F. BUSH, Receiver of the ST. LOUIS IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, February 6, 1918.

1. **RAILROADS**; Death at Crossing: Evidence. Evidence *held* sufficient to support a finding that plaintiff's deceased husband was on a crossing and not on the right of way when struck by a train.

2. ————: Crossings: Signals: Negligence: Burden of Proof: Contributory Negligence. Failure of trainmen to give signals when approaching a crossing as required by Revised Statutes 1909, section 3140, is negligence *per se* which casts the burden on the railroad to show such failure was not the cause of injury. The ordinary rule that the burden is on plaintiff to show the causal connection is changed by statute in such cases.

3. ————: Injuries at Crossing: Contributory Negligence: Question for Jury. Contributory negligence is a defense in such cases and whether óne killed on a railroad crossing where no statutory signals were given and the night was dark and rainy was guilty of contributory negligence in not seeing or hearing the train *held,* under the evidence, a question for the jury.

4. ————: Deaths at Crossings: Signals: Statutes Applied. The statutory requirement as to railroad trains giving signals on approaching public road crossings, inures only to the benefit of persons traveling on the public road and crossing or intending to cross the railroad track and Revised Statutes 1909, section 3140, requiring certain signals and throwing the burden on railroad to show that failure to give statutory signals was not the cause of

injuries at the crossing, does not apply to one killed on the crossing who was walking down the track and not across the track.

5. ———: Deaths at Crossings: Signals: Statutes Applied. Revised Statutes 1909, section 3140, requiring certain signals and throwing the burden on railroad to show that failure to give statutory signals was not the cause of injuries at a crossing, does not apply to one killed on the crossing who was walking down the track and not across the track.

6. APPEAL AND ERROR: Reversible Error: Instructions. It was reversible error, where the principal instruction for plaintiff covering the whole case failed to state that signals required at railroad crossings by Revised Statutes 1909, section 3140, only applied to those walking along the highway, although the court gave such an instruction at defendant's request.

Appeal from Stone County Circuit Court.—*Hon.* *Fred Stewart*, Judge.

REVERSED AND REMANDED.

*Barbour & McDavid, Rufe Scott* and *James F. Green* for appellant.

*G. W. Thornberry* and *Hamlin, Collins & Hamlin* for respondent.

STURGIS, P. J.—The plaintiff, as widow of William Kerr, deceased, sues for damages under the wrongful death statute for the death of her husband caused by the alleged negligence of the defendant in operating as receiver the St. Louis, Iron Mountain & Southern Railroad. The deceased met his death on the night of March 1, 1916, at or near a public road crossing some three miles east of Galena, Stone County, Missouri, where his body was found about nine o'clock p. m. The railroad runs north and south through the town of Galena and just south of the town turns east, crosses James River, and runs east and then southeast to the town of Reeds Spring. The deceased was a farmer and lived adjoining the defendant's right of way on the south something more than a quarter of a mile east of the crossing where he met his death and was at

the time going from Galena to his home. The public road from Galena to Reeds Spring also passes deceased's home and follows the same general direction of the railroad, and, crossing it at right angles from the north side to the south side at Scobee Crossing, continues east past deceased's residence which is between the wagon road and the railroad and close to each.

The petition alleges that the deceased was returning home from Galena on the night of March first and in doing so was traveling the public road to the Scobee Crossing and while attempting to cross the railroad at such crossing was struck and killed by defendant's work train running west toward Galena. The sole ground of negligence alleged was that this train was run at a high and dangerous rate of speed across the public road without giving any statutory warning of ringing the bell or sounding the whistle. It is distinctly alleged that deceased was at all times traveling on the public highway and was crossing the railroad in so doing when he was struck and killed.

The answer is a general denial and pleads contributory negligence in that the deceased carelessly and without looking or listening went upon the railroad track in front of an approaching train and was thereby struck and killed. The reply denies the contributory negligence and says that the night was dark and the engine of defendant's train was running without a headlight or any light and was pushing a freight car in front of the engine; that no signal or warning was given and that owing to the conditions the deceased had no warning of the train's approach.

The defendant's theory, developed at the trial, is that the deceased approached this crossing traveling down the *railroad track* going home and that he was struck and killed while on or trying to cross the cattle guard at the side of the public road; or at least the evidence makes this as probable as the plaintiff's theory. The last time William Kerr was seen alive was at Galena, apparently starting home about five o'clock in the evening by going east on the public road. This

road, however, after crossing James River just east of town on a bridge further north than the railroad bridge, there divides, one road going north and east over the hills and returning to the railroad, the other going south and passing under the railroad river bridge and thence east on the south side of the railroad. There was a path leaving this southern branch near the railroad bridge by which pedestrians frequently went onto the railroad track and thence east along such track. No one knows which of the three roads (the north public road, the middle railroad or the south public road) the deceased traveled toward the fatal crossing, though the case proceeded upon the general assumption that it was either the north public road or the railroad. There was evidence that deceased had used both routes more or less frequently. This, however, is not very material, as all these roads, the two wagon roads and the railroad, again converge at what is called the Covey Crossing, a half mile or more west of and before reaching the Scobee Crossing where deceased was killed. From the Covey Crossing to the Scobee Crossing the public road and the railroad are nearly parallel and close together. The material point is to know whether the deceased traveled from the Covey Crossing to the Scobee Crossing along the public road or the railroad track, for that determines whether when killed he was crossing the railroad on the public road or was crossing the public road on the railroad.

That deceased was struck and killed at the crossing (however he approached it) as the jury found, we think amply supported by substantial evidence. His body was found by traveler on the railroad an hour or less after the train in question passed over this crossing. The trainmen, however, knew nothing of the accident. The deceased's body was found sixty feet or more west of the west cattle guard lying between the rails but the evidence all showed that it was dragged at least from such cattle guard. There is substantial evidence that there was blood and brains near the north rail at a point at least two or three feet east of the east side of

this cattle guard and therefore in the public highway, though some ten feet from the traveled wagon track. As the train was going west some fifteen to twenty miles per hour when it struck deceased, he could hardly, when struck, have been further west than the first blood spots and was likely struck and knocked some distance by the first impact and left these traces when he next touched the rail and ties. This is further shown by his cap being found just east of the cattle guard and in the highway at or near the same place as the blood and brains. Some lemons which the deceased carried were found under the cattle guard. If the deceased approached along the highway it is not unnatural in view of its muddy condition that he walked along the side of the traveled track rather than in it. This point is therefore settled by the jury's verdict.

It is also settled in the same way that defendant was negligent in failing to give any warning by bell or whistle in approaching this crossing. Several witnesses who were in a position to observe and know so testify and the evidence on this point cannot be called weak. This failure to give the statutory signal by bell or whistle in approaching a public road is negligence *per se;* and, with the finding that deceased was killed and plaintiff's damage was sustained at such crossing, the burden is cast on defendant to show that such negligence was not the cause of such injury. [Sec. 3140, R. S. 1909.] The rule is stated in McNulty v. Railroad, 203 Mo. 475, 477, 101 S. W. 1082, that: "The effect of the statute, section 1102, Revised Statutes 1899, adopted in 1881, has been to change the law in this respect, so as to make a prima-facie case by proof of the failure to ring the bell accompanied by an injury at the crossing. There need be no proof that the failure caused the injury. The law supplies that proof, and casts the burden upon the defendant to show that the failure to ring the bell was not the cause of the injury." It is the general rule in negligence cases that the plaintiff must show a causal connection between the negligent act and the injury or damage; but such is not

the law by reason of our statute in a case of negligence for failure to give statutory signals at road crossings. "Such would also be the rule as to failure to give the statutory signals, were it not that the effect of the statute (Section 3140, R. S. 1909) has been to change the law in this respect, so as to make a prima-facie case by proof of the failure to give the signals, accompanied by an injury at the crossing. There need be no proof that the failure to give the signals caused the injury. The law supplies that proof and casts the burden upon the defendant to show that the failure to ring the bell was not the cause of the injury." [Byars v. Railroad, 161 Mo. App. 692, 707, 141 S. W. 926; 2 Thompson on Negligence, sec. 1587; Huckshold v. Railroad, 90 Mo. 548, 2 S. W. 805.] In McGee v. Railroad, 214 Mo. 530, 544, 114 S. W. 33, the court quoted the statute and said: "Under that statute, plaintiffs were relieved from proof that the failure to ring the bell or sound the whistle was the proximate cause of the injury. *The statute supplies the causal connection.* In other words, given proof of a failure to comply with the law and that injury ensued at the crossing (as here), then the statute raises a presumption that the injury was the result of disobeying the statute—that they bore the relation of cause and effect—and the burden is cast upon the defendant to show that the failure to give the statutory signals did not cause the injury."

The above rule, however, does not relieve the plaintiff of the consequences of contributory negligence as a defense (Whitesides v. Railroad, 186 Mo. App. 608, 617, 172 S. W. 467); and the defendant discharges the burden cast upon him by the statute if it shows that the deceased was guilty of negligence contributing to and mingling with defendant's negligence in causing the injury. The evidence is that the railroad track at this point was straight and unobstructed; and that under normal conditions a train could be readily seen and heard for such a distance as to make the fact that deceased, with sight and hearing unimpaired, went in front of this train, speak negligence on his part, for it

was only a step from safety to danger and from danger to safety. It was to rebut this contributory negligence, and not as an original ground of negligence, that the plaintiff showed by substantial evidence that the night was very dark, stormy and surley; that the train was running down grade not working steam and without a headlight or any light; that it was March first and a rather strong March wind was blowing. It had recently been raining also, and a small mountain creek just beyond the right of way, with a sycamore tree, branches and all, felled across it for a foot log, was making considerable "roar"—so much so that one witness said he could not be heard across it in trying to talk to another witness on the other side. Under these facts and aided by the presumption of due care attending the deceased (Crumpley v. Railroad, 111 Mo. 152, 158, 19 S. W. 820) the deceased cannot be declared negligent as a matter of law in not seeing or hearing the approaching train.

The difficult question in the case is defendant's insistence that deceased, though injured at the crossing, was not within the protection of our statute relating to train signals at road crossings and injuries caused by failure to give same, unless it be shown that deceased was a traveler on the public highway crossing the railroad rather than a traveler on the railroad approaching or crossing the highway. The rule is stated in 2 Thompson on Negligence, sec. 1560, thus: "But it has been well reasoned that this omission is negligence as a matter of law only when injury results therefrom to persons or animals endeavoring or intending to cross the track upon a street or highway crossing; and this for the manifest reason that the object of the statute is to protect persons and animals in this situation, and not in other situations." In 3 Elliot on Railroads, sec. 1158, p. 333, the law is thus stated: "Where the statute does not specifically designate the class to whom the duty is owing, the courts have usually construed it to be due only to those who are about to use, are using or have lately used the crossing, and have held that no

others could recover for injuries resulting from a failure to give the signals,'' citing two Missouri cases, Bell v. Hannibal, etc., Railroad, 72 Mo. 50; Evans v. Atlantic, etc., R. Co., 62 Mo. 49. In Rohback v. The Pacific Railroad, 43 Mo. 187, our statute was held not to apply to an employee of the railroad though working at and injured at the crossing of a public street and the railroad, the court observing that: "It is obvious that the enactment of the law was intended primarily for the protection of the traveling public and passengers." In Evans v. Railroad, 62 Mo. 49, 57, the court said: "The object of the statute is manifestly to protect persons passing on the road or highway," and not those at nearby private crossings. In that case the plaintiff was an employee crossing the railroad at a path near the public crossing. In Bell v. Railroad, 72 Mo. 50, the court said that: "The requirement of section 806 (now section 3140), Revised Statutes, that the Bell shall be rung or the whistle sounded at the approach of a railroad train to the crossing of a public highway, is for the benefit of persons on the highway at or approaching the crossing; failure to comply with the statute will furnish no ground of complaint to a person injured on the track at a distance from the highway." In Burger v. Railroad, 112 Mo. 238, 246, 20 S. W. 439, the court held that the statute "was intended to give warning of the approach of a train to persons who might be crossing, or intending to cross, the railroad over the public highway;" and did not apply to one going between cars blocking a public crossing. In Degonia v. Railroad, 224 Mo. 564, 592, 123 S. W. 807, the court said crossing signals are not for employees or persons "not crossing or intending to cross at a public crossing," but the case then in hand related to an injury to an employee at a place other than a public crossing. It was there pointed out that the statute was restricted to injuries sustained "at the crossing." Ayers v. Railroad, 190 Mo. 228, 237, 88 S. W. 608, holds that the statute does not apply to one injured at a private crossing, though near enough to a public crossing to be warned by a signal for it.

Wasson v. McCook, 80 Mo. App. 483, holds that the statute does not apply to one traveling on the highway but not about to cross and not injured at the crossing. The case of Whitesides v. Railroad, 186 Mo. App. 608, 617, 172 S. W. 467, is the only case directly in point on the facts, for there the deceased came to the crossing along the railroad track and the court said: "Besides the considerations which point the statutory obligation to give signals on approaching the crossing of a public highway as one inuring only in favor of those persons using the crossing in connection with the use of the highway, it is to be said that plaintiff's right, in so far as this argument is concerned, is to be denied on the grounds of contributory negligence."

There is much reason to limit the statute to those cases where the injury occurs *at the crossing*, for such is the statute, but to limit it further, by inquiring into the purpose for which he goes there and the route by which he came, narrows the statute and were this a new question we might hesitate to so hold, but such is the firmly established law. If, therefore, the deceased came from the Covey Crossing to the Scobee Crossing by walking the railroad track instead of the public road, he is not entitled to recover on the negligence alleged; but he is so entitled if he came by the public road.

Defendant insists that it is purely conjectural as to which way plaintiff traveled toward Scobee Crossing and invokes the well known rule that, where the injury may have occurred from either of two causes or in either of two ways for only one of which defendant is liable, it is incumbent upon plaintiff to produce substantial evidence that the injury was caused by the one for which defendant is responsible. [Goransson v. Riter-Conley Mfg. Co., 186 Mo. 300, 307, 85 S. W. 338; Warner v. Railroad, 178 Mo. 125, 133, 77 S. W. 67.] In this case there is evidence that the public road was the one most used by the deceased and especially in recent times since he had been warned of the danger of traveling on the railroad. In the absence of direct

evidence it may be that the presumption of using due care and not going into danger should be indulged in deceased's favor. Moreover, it was shown that another train going in the same direction as this one had passed over the same track and road crossing only about thirty minutes previous to the one which killed the deceased and that a son of deceased was then at the fatal crossing and afterwards walked down the track for a quarter of a mile and deceased was not then along the track.

The case is a close one on this point and demands that the jury be clearly and correctly instructed as to the facts which render defendant liable. The leading instruction in the case, and the only one for the plaintiff, except as to the measure of damages, is this:

"The court instructs the jury that under the law of Missouri a bell is required to be placed on each locomotive engine used by railroad companies in this State, and it is made the duty of the railroad company or its agent in charge of said locomotive engine and running same over any traveled public road to cause said bell to be rung at a distance of at least eighty rods from the place where the railroad shall cross a traveled public road, and in this case, if you believe that defendant ran a locomotive engine and train of cars over a traveled public road in Stone County at a point between the town of Reeds Spring and Galena, in said county, and such engine and train struck and killed William Kerr in the crossing of a traveled public road and said railroad, and if you believe the defendant failed to ring the bell as aforesaid, and that such failure was the direct cause of William Kerr being struck and killed on said crossing, then if you believe plaintiff was the wife of said William Kerr, you will find the issues in this case for her, unless you believe from the evidence in this case that defendant sounded the steam whistle on said engine at intervals for a space of eighty rods before reaching said crossing, and (or) unless you further believe that said William Kerr was guilty of negligence, which contributed to his

death; and you are instructed that contributory negligence on the part of said William Kerr must be established by the greater weight of all the evidence in this case, and unless it is so established you cannot find for defendant on that ground.''

This instruction is clearly erroneous in ignoring the question of how the deceased approached the crossing, whether along the public road or along the railroad. Its only requirement in that respect is that he was struck and killed on the crossing of the public road and that the failure to ring the bell (in the absence of sounding the whistle) was the cause of his being struck and killed on the crossing. This instruction covers the whole case and directs a finding on the conditions named and does not require a finding that deceased was traveling *on the highway* in attempting to cross the railroad. That the principal instruction should not omit so vital a matter needs no citation of authorities and it does not correct the error to give an instruction for defendant supplying such omission. The rule is that when plaintiff's principal instruction purports to cover the whole case and directs a verdict for plaintiff on a finding of the facts there required and omits to require the finding of a fact essential to sustain the verdict such error is not cured by the giving of another instruction either for defendant or plaintiff supplying the deficiency. Such instructions are held to be inconsistent in that one authorizes a verdict without finding such essential fact though the other requires it. [Traylor v. White, 185 Mo. App. 325, 331, 170 S. W. 412; Ghio v. Merchantile Co., 180 Mo. App. 686, 700-1, 163 S. W. 551; Hall v. Coal and Coke Co., 260 Mo. 351, 369, 168 S. W. 927; Wojtylak v. Kansas and Texas Coal Co., 188 Mo. 260, 283, 87 S. W. 506; Walker v. White, 192 Mo. App. 13, 18, 178 S. W. 254; Humphreys v. Railroad, 191 Mo. App. 710, 721, 178 S. W. 233; Wilks v. Railroad, 159 Mo. App. 711, 727, 141 S. W. 910; Degonia v. Railroad, 224 Mo. 564, 588, 123 S. W. 807; Shoe Co. v. Lisman, 85 Mo. App. 340, 344.]

This error requires a new trial and we may say that while this instruction is copied from Byars v. Railroad, 161 Mo. App. 692, 702, the point on which we condemn it was not in that case; and we further say that it is subject to criticism (though not reversible error for this alone) in that it lays too much stress on the failure of ringing the bell. It reads as if the statute made the ringing of the bell the essential thing for which whistling is a substitute or excuse only. The form given in Crumpley v. Railroad, 111 Mo. 152, is better. Other verbal criticisms can be avoided at another trial. The case is reversed and remanded. *Farrington* and *Bradley, JJ.,* concur.