CHRISTIAN *et al.* v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, *Appellant.*

### Division Two, March 29, 1898.

1. **Life Insurance**: MISREPRESENTATIONS IN POLICIES: PRACTICE: PLEADING. It is a matter for the jury to determine whether misrepresentations made by the insured as to life insurance policies held by him in other companies, etc., are material and actually contributed to the contingency on which the policy was to become payable. The misrepresentations, however numerous, are immaterial, unless the matter misrepresented made the policy payable, or in some way contributed thereto. And unless the answer pleads that the policy would not have been issued had the company known the real state of the facts, no issue of misrepresentations is in the case.

2. ———: CONTRACT: STATUTES. A statute in force at the time a policy of insurance is issued, becomes a part thereof as effectually as if incorporated therein.

3. ———: CORRECT INSTRUCTION: FRAUD. This instruction was given and held proper in a suit on an insurance policy, wherein the defense was that the insured person, at the time he made application for the policy, contemplated suicide and afterward carried that intention into effect: "The court instructs the jury that, unless they find from the evidence that at the time Florida applied for the policy of insurance sued on, to wit, July 11, 1892, he intended to perpetrate frauds of the character which the defendant claims he did thereafter perpetrate, the jury must disregard all the testimony concerning said alleged frauds." *Held*, also, that it was unnecessary to define the word "frauds" therein.

4. ———: SUICIDE: "CONTEMPLATED." The word *contemplated*, used in the statute barring a recovery against an insurance company, if "the insured *contemplated* suicide at the time he made application for the policy," is held to mean *intended*.

5. **Practice**: FAULTY INSTRUCTIONS. A party is not at liberty to complain of an instruction given for his adversary when his own exhibits the same faults.

6. ———: ———: REMEDY. In a civil cause if an instruction otherwise correct is open to the objection that it does not "state the issues to the jury," the defect should be supplied by an appropriate instruction asked by the opposite party.

7. ———: INSTRUCTIONS. An instruction given for plaintiff, having been found free from error, will not be held erroneous because it is in conflict with one given in behalf of the losing defendant; but on the contrary, the one given for defendant, in so far as it is in conflict with the other, will be held to be erroneous.

8. ———: ERROR IN APPELLANT'S INSTRUCTIONS. Self-invited error is no ground for reversal.

9. ———: ISSUES: HOW RAISED. The issues in a cause must be raised by the pleadings, and can not be enlarged by the evidence or the instructions, or both combined.

*Appeal from St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Lee & McKeighan* and *Robert A. Holland, Jr.*, for appellant.

(1) The court erred in restricting the evidence introduced by defendant to the defense set up in the answer that Florida contemplated suicide at and prior to the time when he made his application for the policy of insurance sued on herein. Said evidence was also admissible, and should have been received, under the second defense set up in defendant's answer. (2) The court below erred in refusing to give to the jury, at the instance of defendant, instructions A and B. Section 5849, Revised Statutes 1889, was not intended to protect the insured in insurance policies against the avoidance of the policy secured by representations and statements falsely and fraudulently made, and for the purpose and with the intent of deceiving and misleading the insurance companies; nor was said section intended to absolve and discharge the insured in insur-

ance policies from the obligations of good faith and honesty in their applications. This section of the statute was only intended to prevent insurance companies from escaping the obligations of their policies when the insured acted in good faith and honestly in making answers to questions put to him, not intending by such answers to deceive. *White v. Ins. Co.*, 4 Dill. 177. (3) Misrepresentation means an innocent misstatement or non-disclosure of facts, while fraud consists in representations which are known to be false, or which are made in reckless ignorance of their truth or falsity. Clark on Contracts, pars. 163 and 166. (4) The construction put upon section 5849 by the court below in its ruling, restricting the effect of the evidence and refusing to give defendant's said instruction, would lead to gross injustice and make it an instrument and an authority for fraud and deceit. Courts will not suffer a statute to be so construed. *Bowers v. Smith*, 111 Mo. 45. (5) It is a principle as old as the law itself that fraud vitiates everything. It ought not to be supposed that the legislature intended to overthrow this principle and exempt insurance contracts from its application. An equitable and not a fraudulent effect must be given to the statute. *St. Louis v. Lane*, 110 Mo. 254; *Plum v. Kansas City*, 101 Mo. 525; *State v. Bennett*, 102 Mo. 356; *Kane v. Railroad*, 112 Mo. 35; *State ex rel. v. Field*, 112 Mo. 554; *Ross v. Kansas City*, 111 Mo. 25. (6) The general purpose and object of a statute is never to be overlooked in its construction and application. It must be limited in its operation to cases falling within the mischief intended to be remedied. *State v. Diveling*, 66 Mo. 375; *Hobein v. Murphy*, 20 Mo. 447; *Kane v. Railroad*, 112 Mo. 34; *Fosburgh v. Rogers*, 114 Mo. 122; *State v. King*, 44 Mo. 283; *Schultz v. Railroad*, 36 Mo. 13; *Rose v. Railroad*, 111 Mo. 18; *State ex rel. v. Emerson*,

39 Mo. 89; *Neenan v. Smith*, 50 Mo. 525. (7) The intent of said section was, as hereinbefore stated, to prevent insurance companies from taking advantage of mistakes, misstatements and misrepresentations made by the applicant for insurance in good faith and with the belief that they were true.

*John R. Christian* for respondents.

(1) It will be conceded that fraud vitiates all contracts; and it will not be claimed by us that the legislature intended to overthrow this principle so as to exempt insurance companies from its application. But we must remember that there is a great difference between fraud and warranties, and in no place is this difference greater than in the construction of our statutes when applied to insurance contracts. Fraud is never presumed, but must be proved. Cooley on Torts, 475. (2) In all the cases relied on by appellant on this point, are questions of warranties and not fraud. (3) The attorneys for appellant make a vigorous assault on instruction number 7, which is as follows: "The court instructs the jury that unless they find from the evidence that at the time Florida applied for the policy of insurance sued on, to wit, July 11, 1892, he intended to perpetrate frauds of the character which the defendants claim he did thereafter perpetrate, the jury must disregard all the testimony concerning said alleged frauds." The only possible theory on which this testimony was admitted was as a part of the *res gestae*. That is, that at the time Florida made the application, he intended to commit the fraud that appellant claims he did commit afterward, or some of a like character, and that if he was detected and prosecuted, he would commit suicide. And as a matter of course, if he did not contemplate doing the acts when he made the ap-

plication he could not have contemplated suicide for something that he had never intended doing. Read instruction number 2 given at the request of appellant with number 7, and they are perfectly consistent and much more favorable to the appellant in our opinion than the law justifies. The other objections to this instruction are too technical to require serious consideration. *Aetna Ins. Co. v. Florida*, 32 U. S. App. 761.

SHERWOOD, J.—Action on a life insurance policy for the sum of $10,000, which insurance was effected by A. K. Florida on his own life on the eleventh day of July, 1892. On the twentieth day of January, 1893, Florida assigned this policy to plaintiffs. On the twenty-seventh day of April next following he committed suicide.

The answer of defendant is based on two defenses: The *first*, that at the time Florida made the application for insurance he intended to commit suicide, and that afterward he carried out that intention. The *second*, that it was agreed between the parties that if there were in any of the answers contained in said application any fraud, untruth, evasion or concealment of facts, then any policy granted upon said application should be null and void, etc.; that certain of said answers were not true in that they were false, fraudulent and evasive and a concealment of facts to which said answers related; that the answers did not truthfully answer questions as to the name of the companies and the amount of the insurance he had in each; that there were other insurance companies at that time in which Florida had insurance, giving names and amounts, which he failed to disclose. The answer contains no allegation that defendant would not have issued the policy had it known the real state of the facts respecting which the answers were made. Nor

does the answer contain nor the evidence disclose that any such misstatements in any way contributed to the issuance of the policy.   The reply of plaintiffs was a general denial.

Section 5849, Revised Statutes 1889, provides that: "No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury."

1.   This section being in force when the policy in question was issued, became part and parcel thereof; for whatsoever the law will imply as a part of a contract, becomes such part by implication, and as effectually as if incorporated therein.   *Havens v. Fire Ins. Co.*, 123 Mo. 403; *Daggs v. Fire Ins. Co.*, 136 Mo. 382; *State ex rel. v. Laclede Gaslight Co.*, 102 Mo. *loc. cit.* 485; *State v. Grant*, 79 Mo. *loc. cit.* 122. Under the provisions of the quoted section it was a matter to be left to the jury whether the misrepresentation contributed to the event or contingency upon which the policy was to become due and payable.   It therefore was one of the defenses open to defendant in a suit on the policy, but the answer raises no such issue and pleads no such defense.   It is quite obvious that misrepresentations, however numerous, cut no figure unless they produce the result pointed out in the section under comment; but no such issue was raised as aforesaid, and consequently is not now open for consideration.   This view renders unnecessary the review of any instructions based on the point of misrepresentations.

VOL. 143 mo—30

2.   Section 5855, Revised Statutes 1889, contains this provision: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void." Upon this section the first count in defendant's answer is based. For reasons already given this section also becomes part and parcel of the policy of insurance, and that policy is consequently to be read as if that section had been therein inserted. The main point of contention in this case was instruction 7 given at instance of plaintiffs, coupled with the proper construction to be given to section 5855. The instructions, as well given as refused, will accompany this opinion.

Instruction 7 is as follows:   "The court instructs the jury that unless they find from the evidence that at the time Florida applied for the policy of insurance sued on, to wit, July 11, 1892, he intended to perpetrate frauds of the character which the defendant claims he did thereafter perpetrate, the jury must disregard all the testimony concerning said alleged frauds."

This instruction, as is proper, follows the language of the section on which it is bottomed. That section is very plain, clear and unambiguous. We have a statutory provision that in construing statutes, "words and phrases shall be taken in their plain or ordinary and usual sense." R. S. 1889, sec. 6570. In a case of this sort, the statute is its own expositor. The legislature must be presumed to have intended what it has so clearly expressed, and this case cuts off all resort to construction. Suth. Stat. Construc., secs. 237, 238.

The United States Court of Appeals in the recent case of *Ins. Co. v. Florida*, 32 U. S. App. 753, has ruled that a similar instruction to 7 was correct, and that the word "contemplated" in section 5855 meant "intended," as intend is a synonym of contemplate. This view evidently accords with that of the trial court in giving instruction 7, and we discover no objection to this instruction.

It is objected that in this instruction the court did not "state the issues to the jury," and that it is "unintelligible and ambiguous." As to the first objection, this being a civil cause, even if the instruction was defective in not stating the issues to the jury, the instruction being otherwise correct, such defect should have been supplied by an appropriate instruction asked by defendant. Besides, though the issues were not defined in instruction 7, it is proper to say that such fault, if it be one, runs through all of the instructions given at request of defendant. A party is not at liberty to complain of an instruction on the part of his adversary where his own exhibits the same fault. *Reilly v. Railroad*, 94 Mo. *loc. cit.* 611, and cases cited. As to the second objection, we do not regard the instruction as being either "unintelligible or ambiguous." It is couched in very plain terms, and it was unnecessary to define the term "frauds." *Muehlhausen v. Railroad*, 91 Mo. 332; *Masterson v. Railroad*, 5 Mo. App. 575. Jurors of ordinary intelligence would find no difficulty in understanding the meaning of words in daily use.

3. But it is urged that instruction 7 is in conflict with instruction 2, given at defendant's request, which instruction is as follows: "The court instructs the jury that if they believe from the evidence that the said Florida, before the date of his application for the policy of insurance sued on herein, had been the owner of certain notes secured by deeds of trust or mortgages

on real estate, either in the State of Missouri or the State of Illinois; that he had sold or transferred said notes to third parties; that without having paid said notes, he had fraudulently executed deeds of release and satisfaction of said deeds of trust on said property; that the said Florida, at the time of the making of the application for the policy sued on herein believed that he had by said acts subjected himself to criminal prosecution, and that in consequence thereof he contemplated committing suicide, rather than be exposed to the publicity and disgrace of said prosecution in the event that the same should be attempted; and that in consequence of such belief and contemplation he had conceived the idea of taking out, among others, the policy of insurance sued on herein, as provision for his family and his creditors in case he should so commit suicide, as aforesaid, then, and in that case, the jury should find a verdict for the defendant.''

A long while ago it was decided in this State that a party can not complain of errors in an instruction given at his own instance. *Flowers v. Helm*, 29 Mo. 324. This ruling was thought indisputably good law for many years. Later on, however, in *Bluedorn v. Railroad*, 108 Mo. 439, *a brand new* doctrine was proclaimed, to wit: That if the instructions of a plaintiff in a damage suit were all right and regular, but one asked by and given to defendant, was erroneous and in conflict with the correct instructions of plaintiff and the latter recovered, that this conflict, on the appeal of defendant, would *necessitate the reversal of the judgment* . . . . . . . In other words, that *self-invited* error was ground for reversal. But this heresy was not long lived; it received its *coup de grace* in *Baker v. Railroad*, 122 Mo. 533. So that having held plaintiffs' instruction 7 is free from error, it must needs follow that if defendant's instruction 2 is in conflict therewith, it

must be erroneous, and if so, defendant takes nothing by reason of such conflict.

4.    Finally, it is asserted "that the court erred in restricting the evidence introduced by defendant to the defense set up in the answer, that Florida contemplated suicide at and prior to the time when he made his application for the policy sued on herein." Hitherto it has been supposed that the issues to be raised in a cause had to be raised alone by the *pleadings*, and could not be enlarged either by the evidence, or the instructions, nor indeed by both combined. *Bank v. Armstrong*, 62 Mo. 59.

Finding no error in the record, judgment affirmed. All concur.