ALVAH M. THOMPSON, Appellant, v. JOSEPH W. MOON BUGGY COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted December 5, 1910. Opinion Filed February 21, 1911.

1. APPELLATE PRACTICE: Invited Error: Instructions. An appellant is estopped to claim reversible error resulting from the inconsistency of instructions, where he himself invited the error by asking a wrong declaration of law.

2. PRINCIPAL AND AGENT: Authority of Agent: Modification of Contract: Instruction. An automobile sales agent obtained a written contract from plaintiff to purchase fifteen automobiles from defendant, the former agreeing to deposit with the latter $1000 as earnest, which was to be applied as a payment on the last machine shipped. The contract was on a printed blank on which was printed the words, "subject to approval at the home office." On the next day, the agent addressed a type-written letter to plaintiff, signed with defendant's name, by himself as "sales manager," in which it was stated that, in consideration of plaintiff's undertaking the agency of defendant's car, he was released from the obligation to purchase fifteen automobiles as provided in the previous contract. The original contract was received and approved by defendant. Plaintiff brought suit to recover the one thousand dollars paid by him to

defendant and for damages on account of plaintiff's being unable to operate the business of selling automobiles, by reason of the automobiles furnished him by defendant for demonstration purposes being defectively constructed. No evidence was adduced tending to prove the agent had apparent authority to write said letter nor to show that defendant held him out as an agent with general power to make contracts for the sale of automobiles or for the establishment of sales agencies. *Held*, that an instruction for plaintiff that if defendant's agent. was authorized to make contracts for establishing agencies for the sale of its automobiles or was held out to plaintiff or others as having such power, plaintiff could assume that he had authority to bind defendant as to all matters pertaining to the establishment of agencies and as to terms and conditions of such contracts as he made for defendant, and hence if the modification contract was part of the agreement made on the preceding day and was so intended by plaintiff and the agent, then defendant was bound by it, unless plaintiff had notice that the agent was not authorized to make such modification, and that the burden was on defendant to establish, by a preponderance of the evidence, that plaintiff had such notice before executing the contract, should not have been given, because there was no evidence tending to prove the agent had any authority to make the supplemental contract.

3. ——: ——: ——. In such a ·case, an instruction that unless the jury believed from the evidence the agent had authority from defendant to modify the original contract, or that defendant afterwards had knowledge of the modification and ratified it, plaintiff could not recover, was a correct statement of the, law as applied to the facts.

4. ——: ——: ——: Knowledge of Agent's Limited Power. Where an automobile sales agent made a contract for his employer to sell fifteen automobiles, to be delivered at specified times and for specified prices, and the contract was on a printed blank, on which was printed the words, "subject to approval at· the home office, St. Louis, Missouri," and the next day the agent addressed a letter to the vendee, stating that in consideration of his undertaking the agency of the vendor's car, he was released from any obligation to purchase fifteen cars as provided for in the previous contract, the vendee, at the time such letter was written having before him the contract which recited it was subject to approval, etc., must be charged with knowledge of the limitation of the agent's authority.

5. ——: ——: ——: Sufficiency of Evidence. In an action on a contract, alleged· to have been modified by defendant's agent (the contract as originally made having been sub·

mitted to and ratified by defendant) where the authority of the agent to make the modification was in issue, *held*, the evidence was sufficient to show defendant had not ratified the modification.

6. **VERDICTS: Inconsistent Verdict: Responsiveness to Issues.** Plaintiff sued for a deposit under an automobile sales agency contract binding plaintiff to purchase fifteen cars from defendant, claiming under a modification made by defendant's agent the next day after the signing of the contract, relieving the plaintiff of the duty of purchasing any more cars than he sold. Defendant denied the agent's authority to make the modification, and filed a counterclaim for damages for plaintiff's breach of the contract in failing to purchase any of the cars. *Held*, that a verdict for defendant on plaintiff's cause of action and awarding defendant nominal damages should be construed to mean that plaintiff was not entitled to recover anything from defendant, and that defendant, while sustaining its counterclaim, suffered no damage, or that, by retaining the deposit, its damage was covered, and said verdict was, therefore, within the issues and not inconsistent.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

AFFIRMED.

*George B. Webster* for appellant.

(1) The fifth instruction given which was requested by the plaintiff and the eighth, which was given at the request of the defendant, were in irreconcilable conflict. Instructions which are confusing and misleading or which express different and inconsistent. views of the same matter are erroneous, and if given the judgment will be reversed. Klamp v. Rodewald, 19 Mo. 449; Wood v. Fleetwood, 19 Mo. 529; Clark v. Kitchen, 52 Mo. 316; Casey v. Steinmeyer, 7 Mo. App. 556; Legg v. Johnson, 23 Mo. App. 590; Redpath v. Lawrence, 42 Mo. App. 101; Frank v. Railroad, 57 Mo. App. 181; Hickman v. Link, 116 Mo. 123; Bluedorn v. Railroad, 108 Mo. 439; Berryman v. Cox, 73 Mo. App. 67; Standard Oil Co. v. Meyer Bros.,

74 Mo. App. 416; Bowen v. Epperson, 136 Mo. App. 571; Frank v. Railroad, 57 Mo. App. 181; State v. Herrell, 97 Mo. 105; State v. Nauer, 2 Mo. App. 295. (2) The jury found against the plaintiff on its first cause of action and also against the defendant on its first counterclaim. Both of these conclusions could not possibly stand together, and it is impossible to determine on what such a finding rests unless it be in the nature of 'a compromise. Wellman v. Railroad, 219 Mo. 155; Payne v. Railroad, 129 Mo. 405; Roman v. Boston Tr. Co., 87 Mo. App. 186.

*Wilfley, McIntyre & Nardin* for respondent.

(1) Where there is conflict in the instructions and the conflict arises out of an element in the instruction given at the request of appellant which there is no evidence to support, it does not constitute reversible error. Bowen v. Epperson, 136 Mo. App. 571. (2) One cannot complain that an instruction given at his instance conflicts with one given for the other party when such conflict constitutes error in his favor. Alexander v. Clark, 83 Mo. 482; Vail v. Railroad, 28 Mo. App. 372; Shell v. Ins. Co., 60 Mo. App. 644; Hall v. Railroad, 219 Mo. 591. (3) A mere contradiction in a verdict will not be ground for reversal if the appellant is not prejudiced thereby. Johnson v. LaBarge, 46 Mo. App. 433.

REYNOLDS, P. J.—The petition upon which the case was tried contains three counts, the first on a contract of date January 29, 1907, as modified by a memorandum of January 30, 1907, it being averred that $1000 had been paid on the price of fifteen motor cars contracted for and that subsequently on January 30th, "the said contract was modified by the mutual consent of the plaintiff and the defendant so as to release the plaintiff from the obligation to purchase the fifteen motor cars

above mentioned; that thereafter, to-wit, on November 5, 1907, the plaintiff demanded of the defendant the return of the said sum of $1000 so paid by him to it as aforesaid, but that the defendant failed and refused to repay the said sum to plaintiff and now wrongfully withholds the same." Judgment is demanded for this sum and interest and costs. This contract and memorandum will be referred to hereafter. For a second cause of action it is averred that entering into the contract of the 29th of January aforesaid, and on the faith of it, plaintiff had rented a store in Boston and at great expense had prepared and furnished suitable quarters therein for the sale, repair and storage of defendant's motor cars and automobiles; that defendant shipped to plaintiff one automobile of its manufacture, warranted by it to be suitable for the purposes of demonstration but that it was so defectively constructed that it could not be operated or made to run and that by reason of the premises plaintiff had been unable to operate the business of selling automobiles during the season and lost the value of the garage and quarters prepared and furnished by him to his damage in the sum of $2500, for which he demands judgment. There was a third count in the petition but it was abandoned.

The answer, admitting the execution of the contract of the 29th of January, but specifically denying the execution of the contract of January 30th, or any other modification of the contract of January 29th, and denying plaintiff's right to recover on either count, avers that defendant had complied with the contract of the 29th of January so far as it was required but that plaintiff violated it and failed to comply with it. As a further answer to the second count, again repeating the averments as to the contract of January 29th and denying all other allegations in the second count, it is averred that the garage referred to by plaintiff was constructed prior to the execution of the contract. It is also averred that defendant complied on its

part with the contract and that whatever loss plaintiff sustained was the result of his own carelessness and the negligent manner in which he conducted and managed his business and his failure to comply with the terms of the contract. Further answering, and in addition to the two defenses above set out, defendant interposed two counterclaims. The first set up the contract and averring performance of it on its part and the failure of plaintiff to take the fifteen machines or any part thereof, the readiness of defendant and its offer to deliver the same to plaintiff and his refusal to accept, and setting out that its profit on each would have been $200, defendant asks $3000 damages. By its second counterclaim defendant set up the contract of January 29th, averred its readiness and willingness to perform; averred that on March 6, 1907, it shipped a car to plaintiff for the agreed price and for which he paid; that afterwards it replaced the car with another with the understanding and agreement with plaintiff at the time that he immediately return the first car to defendant; that he failed and refused to return it but retained and made use of it until August 5, 1907, after it had been so used as to damage it and render it necessary for defendant to expend upon it a large sum in repairs and sell it as a second-hand car at a loss, and defendant prayed judgment against plaintiff in consequence in the sum of $1000.

The reply, after a denial of all new matter, set up that as to the second counterclaim, the first car shipped was so defective that it could not be operated and when the second car arrived it was also defective; that plaintiff reported this to defendant, who thereupon agreed that plaintiff might keep the first car shipped until the second could be repaired and that as soon as that was done, plaintiff returned the first car to defendant in first-class condition.

At the trial of the case before the court and a jury, evidence was introduced by the respective parties along

the line of the pleadings. So far as material to the determination of the points now presented, it was substantially as follows:

Plaintiff, on or about January 29, 1907, entered into a contract with defendant, a Missouri corporation, the latter acting through one Kehew, a salesman, as defendant claims, or sales manager, as plaintiff and Kehew claim, in which contract it is recited that plaintiff, proposing to engage in the sale of motor cars manufactured by defendant in territory designated, desired to buy a certain number of defendant's motor cars which might be resold by plaintiff within that territory upon terms set out in the contract. With the above preamble the contract recites that in consideration of the mutual promises, plaintiff agreed to purchase of defendant fifteen motor cars of a model and at the list price indicated, f. o. b. cars St. Louis, less a discount named, the delivery of the cars to be in March, April, May and June, 1907, one of the above cars to be shipped as soon as possible, plaintiff agreeing to pay as follows: "$1000 shall be paid to first party immediately upon the execution of this contract; the balance due on each car shall be paid on presentation of a sight draft attached to bill of lading for said cars at the time or times above fixed for delivery. This $1000 to be applied as a credit upon the shipment of the 15th car." The contract is on a printed blank, and purports to have been entered into January 29, 1907, and is signed in duplicate, "Joseph W. Moon Buggy Company, by Geo. F. Kehew, Sales Mgr." Below the signature, printed at the foot of the blank appears this: "Subject to approval at the Home Office, St. Louis, Mo." The contract in the abstract and apparently in evidence does not appear to have been signed by plaintiff, but we gather from the evidence that plaintiff did sign the one mailed by Kehew to defendant. In addition to this contract a typewritten paper was introduced in evidence, addressed to plaintiff and as follows:

"Dear Sir: In consideration of your undertaking the agency of our car under the terms of an agreement of even date, we hereby modify the terms of said agreement as follows, to-wit:

"We hereby release you from any obligation to purchase from us the fifteen cars referred to in paragraph 1 of the agreement, it being the purpose of this modification of the contract that, during the term of the agency, you shall use your best efforts to sell said fifteen, or more cars, but that you are not to be obligated to purchase from us any more cars than you are able to sell.        Yours truly,

Boston, Jan. 30, 1907.        MOON MOTOR CAR CO.,

GEO. F. KEHEW, Sales Mgr."

It appears that the Joseph W. Moon Buggy Company also carried on the business of manufacturing motors under the name of Moon Motor Car Company and advertised motors under that name, but that some time after the date of this memorandum letter above referred to, its members organized a separate corporation under that name, "Moon Motor Car Company." Both of these papers were signed at Boston, Mass., where plaintiff had his place of business.

Only two motors were shipped to plaintiff by defendant, only one being paid for. The first one sent was held to be unsatisfactory, and a second one was sent to take its place, pending the repair of the first. After some delay, the first was returned to defendant, the second being retained. No other cars were ever ordered by plaintiff nor sent by defendant, nor did defendant ever offer to send others, nor was the $1000 credited on the purchase of the one retained: in fact plaintiff does not seem to have asked to have that done but apparently left it for final settlement. The deal between the parties seems to have been abandoned about November, 1907. On the 2d of that month, plaintiff wrote to defendant that he had quit the business

and leased his garage to another party and advised defendant that he was drawing on it that day for the $1000 deposited.  This is the first reference that either party seems to have made, in correspondence between them, to this $1000.  It appears from letters of plaintiff introduced in evidence by defendant, that after this notice of plaintiff that he had drawn on defendant for the $1000, the parties entered upon some negotiations to the effect that instead of defendant sending back the $1000, it endeavored to induce plaintiff to trade for a car, a runabout, apparently, at $1500, and apply the $1000 on the trade.  Plaintiff declined to take a machine at that price, saying that it was more than he could pay.  This seems to have ended the correspondence between them.

Testifying as to his authority and as to the transaction, Kehew stated that he was sales manager of the automobile department of defendant; that his duties consisted in opening and closing agencies in the various cities of the United States which covered soliciting business in the name of the Joseph W. Moon Buggy Company, establishment of agencies and for the sale of Moon cars in the various cities he visited, acting as their representative at the time, and closing deals in their name by his signature as representative for them as sales manager and sole representative.  He stated that he had signed the contract of date January 29th and that the agreement of date January 30th constituted a part of the original agreement; that he had entered into the agreement evidenced by this memorandum with Mr. Thompson (plaintiff) at the office of the latter's attorney, in Boston on January 30, 1907.  Asked to state the circumstances under which this latter paper had been executed, he stated that Mr. Thompson said he was afraid he would not be able to sell the fifteen cars referred to in the original agreement and in order to release him from any liability in regard to the purchase of the fifteen cars, this second agreement was drawn

up. Asked why he had signed the name, "Moon Motor Car Company," to it, when there was no such company at that time, he stated that defendant was then operating the automobile business under that name. He further testified that he had reported both of these transactions to the Moon Motor Car Company; that after the contract of January 29th was signed, he had mailed his duplicate copy to defendant and after the modified agreement of date January 30th was signed, he had mailed a duplicate copy of that to defendant, being mailed within 24 or possibly 48 hours of their execution. Asked if he had, before making the modified agreement of January 30th, obtained authority from defendant to make this modification, he said that he had not. Being asked in redirect examination why he did not obtain this authority, he answered that because, as their sales manager, he considered it his duty to close any and all such agencies to the best possible advantage of the Joseph W. Moon Buggy Company, as he had done in this instance. Asked if he had authority from the company to make this agreement he answered that he had. Plaintiff himself testifying, asked if he knew the position Kehew held as representing defendant, said he knew him as a sales manager and agent of defendant.

Mr. Moon, the president of defendant, testified that Kehew had been engaged by one of the agents of defendant as salesman; that he himself (Moon) was the sales manager at that time of the defendant company and was its only sales manager; that the form on which the first contract was drawn up was the only one furnished to their sales agents or salesmen and that there was printed on that form the words, "all contracts are subject to the approval of the home office;" that he had received this contract of date January 29th shortly after that date and it was accompanied by a check for $1000; that it came from Kehew and he had acknowledged the receipt of it to Kehew; that the first time he

had heard of this memorandum contract dated January 30, 1907, was sometime in February, 1908; that the first time he had heard of plaintiff demanding the $1000 was in November, 1907. He testified that the memorandum or letter of date January 30, 1907, did not accompany the contract of date January 29th when received at the defendant's office in St. Louis.

Beyond testimony as to the condition of the machine sent on and matters relating to the willingness and ability of defendant to furnish all the fifteen machines that it claimed plaintiff had contracted for, and evidence to support the respective claims for damages, it being admitted that plaintiff had only ordered this one machine and no other, except the one referred to in exchange for it, that he had paid for the one and that defendant had never offered to ship any other machines to plaintiff, this is practically the evidence in the case.

As the contention of counsel here turns upon two instructions, one given at the instance of plaintiff, the other at the instance of defendant, it is not necessary to notice the other instructions. These two instructions are numbered 5 and 8. That given at the instance of plaintiff is numbered 5, and is as follows:

"5. If you find and believe from the evidence that George F. Kehew was authorized by the defendant to make contracts for establishing agencies for the sale and disposition of its motor cars, or held him out to the plaintiff or others as having such power, then the plaintiff was entitled to assume that he had authority to bind the defendant as to all matters pertaining to the establishment of such agency and as to terms and conditions of such contracts as he made, or may have made, for the defendant. If, therefore, you find and believe from the evidence that the writing of January 30th, 1907, was a part of the agreement with the plaintiff dated January 29th, 1907, and was so intended by him and Ke-

hew, then you are instructed that the defendant is bound by it unless the plaintiff had notice that Kehew was not authorized by the defendant to make the contract of January 30th, 1907, and the burden of proof is upon the defendant to establish by a preponderance of the evidence that the plaintiff had any such notice before executing the said contract."

That given at the instance of defendant is numbered 8, and is as follows:

"8.    Unless you believe from the evidence that George F. Kehew had authority from defendant to modify the contract of January 29th, 1907, or, that the defendant afterwards had knowledge of said modification and ratified the same, you will find for the defendant on the first count of plaintiff's petition."

The jury returned a verdict in favor of defendant and against plaintiff on both counts of plaintiff's petition; against defendant on its first counterclaim; in favor of defendant on its second counterclaim, awarding defendant one cent damages under that counterclaim.

The assignments of error by counsel for appellant are, first, that the fifth instruction, given at the request of plaintiff, and that the eighth instruction, given at the request of defendant, were in irreconcilable conflict; second, that the verdict is in direct conflict with the instructions and so inconsistent as to make plain the fact that the jury either willfully disregarded the court's instructions or failed to comprehend the issues submitted to them and to consider the evidence on those issues.

We are unable to agree with the learned counsel for appellant, that either of these assignments of error will avail. Instruction No. 5, the one asked and given at the request of plaintiff, proceeds upon the theory that the evidence in the case showed apparent authority on the part of Kehew to make contracts without first submitting them to the approval of his prin-

cipal or that defendant had held him out to plaintiff or others dealing with him as an agent having such general power. That is plaintiff's theory and the theory of this instruction. The theory of instruction No. 8, given at the instance of defendant, in effect tells the jury that unless they find from the evidence that Kehew had the authority to modify the contract, they could not find for plaintiff, unless they found that defendant, with knowledge of the modification of the contract, had ratified it. That is defendant's theory. The learned counsel for appellant is correct in claiming conflict. He, however, contends with great vigor that these two instructions being inconsistent, he is not estopped from claiming reversible error, even if he had invited error himself in asking a wrong declaration of law. Counsel cites several decisions which he claims to be in support of this proposition, among others that of Bluedorn v. Missouri Pac. Ry. Co., 108 Mo. 439, 18 S. W. 1103. Learned counsel, however, has overlooked the fact that the authority of the Bluedorn decision was thoroughly and completely destroyed by the decision of our Supreme Court in Baker v. K. C., Ft. S. & M. R. Co., 122 Mo. 533, 26 S. W. 20; Christian v. Connecticut Mut. Life Ins. Co., 143 Mo. 460, 45 S. W. 268, and Hall v. Mo. Pac. R. Co., 219 Mo. 553, 118 S. W. 56. In this latter case Judge GRAVES quotes (l. c. 591) the very emphatic language of Judge SHERWOOD in the Christian case, in which, referring to the contention that self-invited error was ground for reversal, says that "this heresy was not long-lived; it received its *coup de grace* in Baker v. Railroad, 122 Mo. 533." Assuming these two instructions are conflicting, we are to determine which is correct, under the evidence in the case. It is entirely immaterial which of these two instructions was given first. The point is, which is correct. If that given at the instance of respondent is incorrect, the judgment must be

reversed; if that given at the instance of apppellant is erroneous, then, as it is self-invited error, appellant cannot derive any advantage from that error. We hold that instruction No. 5, given at the instance of plaintiff, should not have been given. On a careful reading of all the testimony in the case, both as abstracted by appellant and as shown by the supplemental statement of counsel for defendant, we are unable to discover any testimony that tends to show apparent authority in the agent Kehew to make the supplemental contract of January 30th, or to show that defendant held Kehew out as an agent with general power to make contracts for the sale of motors or for the establishment of sales agencies. The contract of January 29th, a printed form which was to be filled up according to the agreement of the parties, with names and amounts and number of machines, bore on its face in plain and unmistakable terms a limitation upon the power of the agent Kehew. It did it by these words, "subject to approval at the home office, St. Louis, Mo." It is true that no such clause is on the typewritten, supplemental, contract. But with the prior one before him, on a printed blank, plaintiff must be charged with knowledge of the limitation of the authority of Mr. Kehew. Mr. Kehew's employment, it appears, came originally from a Mr. Moores, who was the designer of defendant. He was the party who went to Boston to look after the repairs and overhauling of the machines, while they were being repaired or reconstructed, but there is not a particle of testimony to show that at that time there was any discussion of the authority of the agent, or that Moores had given Kehew general authority. There is no evidence that any one ever gave him any general authority, or that the president knew that the modified contract had ever been entered into until after November, 1907. The testimony of Mr. Moon is emphatic that he never saw or heard of it until after November, 1907. So that we are unable, after a careful reading

of all the testimony, to find any on which to base an instruction covering the matter of apparent authority, as this instruction No. 5 does. There is no pretense of express authority. Instruction No. 8 is a correct statement of the law as applied to the facts in evidence.

Counsel for appellant contends that there is no evidence of a failure to ratify the supplemental contract on the part of defendant. It may be that no witness, in so many words, said that defendant had not ratified it, but no one, we submit, can read the testimony in the case and arrive at any other conclusion than that, taking it together, it shows an entire lack of ratification. Want of assent or want of ratification is proven as clearly as it is generally possible to prove a negative.

The second proposition, that the verdict is either in direct conflict with instructions or so inconsistent as to make plain the fact that the jury either willfully disregarded the court's instructions or failed to comprehend the issues submitted to them or to consider the evidence on those issues, is also untenable. The plain intent of the jury was to hold that under the facts in evidence in the case and the law as given to them by the court, plaintiff was not entitled to recover anything and that defendant, while sustaining its second count, suffered no damage, or that by retaining the $1000, its damage was covered. In brief, the verdict left the parties just where they had placed themselves. The verdict is within the issues and is warranted by the evidence in the case. While it is true that no instructions were asked or given as to nominal damages, the jury were correctly instructed as to what damages they might give, and how the rule of damages was to be applied.

On consideration of the whole case, we have concluded that the verdict is for the right party and the judgment of the circuit court should be and it is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.