## LULA BYARS, Respondent, v. WABASH RAILROAD CO., Appellant.

### St. Louis Court of Appeals, December 5, 1911.

1. NEGLIGENCE: Imputed Negligence. The negligence of a driver of a vehicle is not imputable to his guest in the vehicle.

2. RAILROADS: Action for Death: Accident at Crossing: Contributory Negligence: Burden of Proof: Presumptions. In an action for the death of a person who, while riding in a buggy, was struck and killed by a railroad train at a crossing, the burden of proving that decedent was guilty of contributory negligence is on the defendant, and in sustaining that burden, it is confronted with the presumption that decedent exercised due care.

3. ———: ———: ———: Demurrer to Evidence. In an action for the death of a person who, while riding in a buggy, was struck and killed by a railroad train at a crossing, where the evidence tended to prove defendant was guilty of negligence in failing to give the crossing signals required by section 3140, Revised Statutes 1909, in order to convict the trial court of error in refusing to direct a verdict for defendant it must affirmatively and conclusively appear from the evidence that decedent failed to act as an ordinarily prudent person would have acted under the circumstances.

4. ———: ———: ———: Contributory Negligence: Looking and Listening for Trains: Evidence. Evidence that a guest of the driver of a vehicle approaching a railroad crossing looked at, and appeared to call the driver's attention to, an approaching train when they were in a position of apparent safety was sufficient to establish that the guest did all that the law required with respect to looking and listening for trains.

5. ———: ———: ———: Contributory Negligence: Question for Jury. In an action for the death of a person who, while riding in a buggy, was struck and killed by a railroad train at a crossing, the evidence tended to prove that decedent; who was a guest of the driver of the vehicle, looked at and appeared to call the driver's attention to the approaching train when they were in a position of apparent safety, and that, when the team was getting close to the track and decedent realized there was danger of their getting upon it, he went to the driver's assistance and endeavored to hold the team back from the track, but did not succeed. There was no evidence that he knew the driver was inefficient or that the team was hard to hold back. *Held*, that the evidence was sufficient to sustain a finding that decedent acted as a reasonably prudent man would have acted under the circumstances.

6. NEGLIGENCE: Contributory Negligence: Sudden Danger. One exposed to sudden danger is not chargeable with negligence merely because he does not adopt the safest and best course to avoid injury, and whether the course adopted was such as a man of ordinary prudence would have adopted is for the jury.

7. RAILROADS: Accident at Crossing: Failure to Give Statutory Signals: Proximate Cause. Under section 3140, Revised Statutes 1909, proof of failure to give the statutory signals, accompanied by proof of injury to a traveler at a crossing by a train, establishes a prima facie case of liability, and the burden is on the railroad company to prove that the failure to give the signals did not cause the injury.

8. NEGLIGENCE: Imputed Negligence: Instructions. In an action for the death of a person, who, while riding in a buggy as the guest of the driver, was struck and killed by a railroad train at a crossing, an instruction that if decedent was in the vehicle with the driver and if the later had complete control of the vehicle and was controlling the movements and directing the same prior to the collision, and if decedent had no control over the vehicle or its movements and was not in the employ or under the control of the driver, then plaintiff was not chargeable with the negligence, if any, of the driver, and if the jury believed that decedent acted as a prudent person, under the circumstances, at the time the vehicle approached near and went

upon the crossing, then they were not warranted in finding for defendant upon its plea of contributory negligence, was a correct statement of the law.

9. **APPELLATE PRACTICE: Instructions: Invited Error.** A party inviting an error by asking and obtaining an incorrect instruction in conflict with a correct instruction given for the adverse party is estopped to complain of the conflict.

10. **RAILROADS: Accident at Crossing: Contributory Negligence: Stop, Look and Listen Rule: Instructions.** In an action for damages sustained in a collision at a railroad crossing, it is not error to strike out the word "stop" from an instruction declaring it to be the duty of plaintiff, as a matter of law, to stop, look and listen for a train when he was approaching the crossing, since whether a traveler approaching a railroad crossing should stop, in addition to looking and listening for trains, is a question for the jury.

11. ——— : ——— : **Instructions: Refusal.** Where, in an action for the death of a person who, while riding in a buggy, was struck and killed by a railroad train, there was ample evidence that the trainmen could have rung the bell or blown the whistle on the locomotive, as prescribed by statute, and that they failed to do so, an instruction requested by defendant, that the testimony showed that the trainmen made use of all the appliances of which they could make use, was properly refused.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

Affirmed.

*J. L. Minnis* and *Robertson & Robertson* for appellant.

(1) The court erred in refusing to instruct a verdict for the defendant both at the close of the plaintiff's evidence and at the close of all the evidence. Boyd v. Railroad, 105 Mo. 371; Sits v. Knott, 197 Mo. 707; Hayden v. Railroad, 124 Mo. 566; Railroad v. Clarkson, 147 Fed. 397; State v. Dettmer, 124 Mo. 435; Kelsey v. Railroad, 129 Mo. 362; Payne v. Railroad, 191 Mo. 215; Phippin v. Railroad, 196 Mo. 321; Sanguinette v. Railroad, 196 Mo. 466; Payne v. Railroad, 136 Mo. 580; Poster v. Railroad, 199 Mo. 82; Stotler

v. 'Railroad, 204 Mo. 619; Weigman v. Railroad, 223 . Mo. 699; Weaver v. Railroad, 60 Mo. App. 207; Newton v. Railroad, 132 S. W. 1195; Stepp v. Railroad, 85 Mo. 229; Warner v. Railroad, 178 Mo. 125; Sapro v. Transit Co., 102 Mo. App. 250; Powell v. Railroad, 76 Mo. 80; Harlan v. Railroad, 65 Mo. 22; 29 Cyc. 848, 489, 490; Hudson v. Railroad, 101 Mo. 33; same case, 123 Mo. 445; Kelley v. Railroad, 75 Mo. 138; Schmidt v. Transit Co., 140 Mo. App. 182; Campbell v. Transit Co., 121 Mo. App. 106; Moore v. Transit Co., 194 Mo. 1; Holland v. Railroad, 210 Mo. 338; King v. Railroad, 211 Mo. 1. (2) Plaintiff's instruction No. 1 was error because it was contrary to the evidence and not supported by the evidence. Schmidt v. Transit Co., 140 Mo. App. 187. (3) Plaintiff's instruction No. 2 was error because it was contrary to the evidence and was not supported by the evidence; and further it was in direct conflict with defendant's instruction No. 2 which properly declared the law. Fechly v. Traction Co., 119 Mo. App. 358.

*E. S. Gantt, Fry & Rodgers* and *Barclay, Fauntleroy & Cullen* for respondent.

(1) No such judicial legislation has been attempted as to lay down the rule that the traveler approaching a railway crossing is bound under all circumstances to stop as well as to look and listen for approaching trains; but the courts generally agree that whether he ought to stop, in the exercise of ordinary care and caution, is a question for a jury, depending upon the circumstances in each particular case. Elliott v. Railroad, 105 Mo. App. 523; Frank v. Transit Co., 99 Mo. App. 323; Huckshold v. Railway, 90 Mo. 548; Donohue v. Railway, 91 Mo. 357; Mayes v. Railway, 71 Mo. App. 142; Petty v. Railway, 88 Mo. 318; Johnson v. Railway, 77 Mo. 546; Russel v. Receivers, 70 Mo. App. 88; Baker v. Railway, 122 Mo. 533; Kelly

v. Railroad, 88 Mo. 534; O'Connor v. Railroad, 94 Mo. 150. (2) While the occupant of a vehicle controlled by another is not absolved from all care at railway crossings, the law does not impose upon the occupant the same degree of care imposed on the driver. The situation of the occupant is different from the situation of the driver. One is active, the other passive. The occupant has a right to presume that neither the company nor the driver will be negligent and it is only when the contrary appears that the law imposes upon him active diligence. Connor v. Railroad, 129 S. W. 777; Stotler v. Railroad, 200 Mo. 107; Howe v. Railroad, 30 L. R. A. 684, 62 Minn. 71; Marsh v. Railroad, 104 Mo. App. 587; Shultz v. Railroad, 79 N. E. 873; Loso v. County of Lancaster, 109 N. W. 752; Cotton v. Railroad, 99 Minn. 366; Railroad v. Eadie, 43 Ohio, 91; Gibson v. Railroad, 83 S. W. 854; Railroad v. Gibson, 91 Tex. 52; Dyer v. Railroad, 71 N. Y. 228; Crawford v. Railroad, 22 Jones & S. 262; Hoag v. Railroad, 18 N. E. 648; State v. Railroad, 15 Atl. 39; Lapsley v. Railroad, 50 Fed. 172; Baltimore v. Railway, 29 Atl. 518; Railroad v. Steinbrenner, 54 Am. Rep. 127; O'Toole v. Railroad, 158 Pa. 99. (3) The doctrine of imputable negligence does not obtain in this State, hence the negligence, if any, of the driver cannot be imputed to the occupant. Connor v. Railroad, 129 S. W. 777; Stotler v. Railroad, 200 Mo. 107; Sluder v. Transit Co., 189 Mo. 107; Profit v. Railroad, 91 Mo. App. 369; Marsh v. Railroad, 104 Mo. App. 577; Baxter v. Transit Co., 103 Mo. App. 597; Becke v. Railroad, 102 Mo. 544; Munger v. Sedalia, 66 Mo. App. 629; O'Rourke v. Railroad, 147 Mo. 352; Bailey v. Railroad, 152 Mo. 462; Johnson v. St. Joe, 96 Mo. App. 671; Keitel v. Cable Co., 28 Mo. App. 657; Duvall v. Railroad, 65 L. R. A. 722. (4) The rate of speed at which the train was run through the village was negligent and defendant ought not to be permitted to invoke its own negligence as a shield. Holden v. Rail-

road, 177 Mo. 456; Williams v. Railroad, 131 S. W. 114.

STATEMENT.—This is an action under section 2864, R. S. 1899, as amended by Laws of 1905, for damages on account of the death of plaintiff's husband, who, while riding in an ordinary farm wagon with Edward Carter (also killed), was struck upon a much travelled public road crossing at the eastern limits of Benton City, Missouri (a place of about one hundred and fifty inhabitants), by one of the defendant's passenger trains. The tragedy occurred on February 7, 1908, about noonday. A trial being had, the plaintiff had verdict and judgment for $6875 and the defendant has appealed.

The first allegation of negligence contained in the petition is that the defendant failed to give the statutory signals by bell or whistle while approaching the crossing. Another allegation is that the train approached the crossing at an excessive and negligent rate of speed. The second charge of negligence, however, was not submitted to the jury, hence is not before us. The answer contained, first a general denial, and then a plea that plaintiff's husband was guilty of contributory negligence in going upon the defendant's track at a public crossing without using the precaution to stop, look or listen for the approaching train. The reply was a general denial.

There was ample evidence that defendant failed to give the statutory signals as charged. The question is, whether the state of the evidence is such as to convict plaintiff's husband of contributory negligence as a matter of law.

The defendant's right of way runs diagonally through Benton City from northwest to southeast, crossing Sims street at an angle as it passes out of the corporate limits. Sims street runs north and south. The defendant's depot is on the south side of the

railroad, about nine hundred feet northwest of the Sims street crossing. Short street immediately adjoins the railroad right of way on the north and runs parallel with it from Sims street northwestwardly to a merger with Front street near the depot. Front street intersects Sims street a block north of the railroad and runs west to the merger with Short street. The space between these streets forms a large right angle triangle, of which Sims street is the base, Front street the perpendicular, and Short street the hypothenuse. This triangular space is separated into two city blocks by Hardin street, which runs north and south about three hundred feet north of Sims street. The northern part of the block to the east of Hardin street was, at the time we are concerned with, occupied by a store building and three residences, with a barn, trees, etc., but the southern part of the block appears to have been vacant. Up alongside the railroad right of way, beginning at about the middle of Hardin street and running northwest, were stock pens, coal bins, granary, scales, etc. These were not on the right of way but were in the south part of Short street and adjoined the right of way. Only the defendant's main line ran down to and across Sims street, but at a point some two hundred feet northwest of the Sims street crossing another track, called the "passing" track, diverged therefrom on the north side and ran northwestwardly and parallel with the main track to a point beyond the depot. When this passing track had reached a point about three hundred and ten feet northwest of the crossing; still another track, called the "house" track, diverged from it on the north side and ran northwestwardly and paralled with the passing track to a point beyond the depot. This house track ran alongside of the stock pens, etc., and was used in loading and unloading therefrom. At the time when plaintiff's husband was killed, the stock track was filled with cars, mostly box cars. One car, a large

furniture car, some ten feet wide and forty or fifty feet long, was standing east of the east end of the stock pen and on the curve of the house track into the passing-track. This car formed what may be termed the "out-post" of obstructions to the view of the main track from Sims street when approaching that track from the north. The main track was forty-two feet from the northern line of the right of way at Sims street. One driving east down Front street and turning south into Sims street would, as he drove in the direction of the railroad, first have his view of the railroad to the right, or west, obstructed by the nearby residences and store which fronted north on Front street and the trees and out-houses connected therewith. The southern part of this block, however, was unoccupied and as one came to it and passed on across Short street and on to defendant's right of way, the view to the right, or north, was unobstructed for over three hundred and ten feet up to the furniture car, which protruded eastwardly and southwardly from the stock pen, which was some three hundred and fifty feet away. It is in plaintiff's evidence that, coming from the north, when one got on to the right of way and within twenty feet of the main track at the Sims street crossing, but not before, a view of the track could be had up to the depot, about nine hundred feet. It may also be assumed from the evidence that when one got within forty feet of the track he could see five or six hundred feet up the track toward the depot.

On February 7, 1908, plaintiff's husband, Joseph Byars, rode to Benton City with Ed Carter, a neighbor. Carter was taking a load of hogs to town in an ordinary farm wagon pulled by a horse and a mule. The team and wagon belonged to Carter and he was doing the driving. Byars had business of his own in town and was riding as Carter's guest. They reached Benton City and Carter delivered his hogs. They then drove to Johnson & Romans' place on the north side

of Front street near the depot. About noon they got into the wagon again and went east along Front street to Sims street. Carter was driving. It was about five minutes before a train from the east was due. The train from the west was behind time. A strong wind was blowing from the east. Romans watched the men and vehicle from the porch in front of his place as they drove away. On cross-examination by defendant's counsel, he testified that the team and wagon, with Carter driving, turned south toward the railroad on Sims street. After they got past the residence on the corner, he got a glimpse of them again going toward the track. He thought they were sitting on a seat with their bodies visible above the sideboards. About that time defendant's No. 20 passenger train sped by toward the crossing, forty minutes behind time, and going sixty miles an hour. It reappeared past the furniture car and Romans saw the team driven by Carter going up on the grade to cross the track. He testified that the men were facing south, the way they were going. The front part of the wagon was nearly across the track when the engine hit them. The wagon was broken into bits and the two men and the horse were killed. The mule lunged forward and escaped. The train went a quarter of a mile further before it could be stopped. Richard McMahan was standing on the porch with Romans. He testified, on cross-examination by defendant's counsel, that he saw the team go on the track in a trot. He did not know whether the men were sitting down or standing up. John Crum was sitting in his wagon in Front street, fifty or sixty feet north of the depot, when the train passed. On cross-examination by defendant's counsel he testified that he looked down toward the Sims street crossing and saw the team going up the grade of the railroad track. This grade commenced about fifteen feet north of the main track. The team was going in a slow trot—about four or five miles an

hour. When he saw them, the men were about fifteen feet from the track. The team was nearer. The train was then forty or fifty feet away. Witness could not tell whether the men were standing up or sitting on a seat. They could be seen from about the waist up. They were side by side and looking straight ahead south. The mule and horse were pulling about even when he saw them. S. L. Palmer, a witness for defendant, testified that he was standing near Crum, up north of the depot, and saw Carter and Byars when their team was one hundred and twenty feet from the track; that they were standing up looking towards the south and kept on doing that until they were on the track. Mrs. Tretchell testified, on cross-examination by defendant's counsel, that she was a block west of the crossing and across a street which parallels the right of way on the south when the men drove up toward the crossing. She saw them when they were close to the track. They were standing up in the wagon. She could not tell whether both had hold of the lines. The team seemed to be pulling even. She could not tell how the men were facing. She was not watching them. The team was trotting at moderate speed. J. F. Powell, the fireman on the engine which killed the men, testified as a witness for defendant that he was on the left, or north, side of the engine looking ahead; that when the engine was between three and five hundred feet from the crossing, he saw the men in the wagon. The driver (Carter) had his back to the engine and appeared to be standing in the wagon. The other man (Byars) was sitting on the east side of the wagon, with the front of his body facing toward the coming engine, but his face was turned south. The team was jogging along at a trot when the mule saw the train and threw up his head, and Byars then looked and seemed to say something to Carter and Carter looked around at the engine. This was when the men were fifty to seventy feet from the track, according to the witness. The

mule apparently started to go a little bit faster and
Carter tried to hold the team, all the time getting closer
to the track. As they got close, Byars seemed to be-
come alarmed about the situation and ran to help Car-
ter hold the lines. When they got within from six to
ten feet of the track the fireman realized they were
coming on the track and he called to the engineer to
stop. Just as the train was about to strike the wagon,
Byars stepped back two or three feet, apparently trying
to get away.

At the instance of the plaintiff, and over the excep-
tions of the defendant, the court gave instructions to
the jury, which included the following:

"1.   The court instructs the jury that under the
law of Missouri, a bell is required to be placed on each
locomotive engine used by railroad companies in this
state, and it is made the duty of the railroad company,
or its agent in charge of said locomotive engine and
running same through a town or city, to cause said
bell to be rung at a distance of at least eighty rods from
the place where the railroad shall cross a public
traveled road, or street, and to keep said bell ringing
until the engine shall have crossed said road or street,
and in this case if you believe that the defendant ran
a locomotive engine over a public traveled road or
street in Benton City, and such engine struck and
killed Joseph Byars in said road or street, and if you
believe the defendant failed to ring the bell as afore-
said, and that such failure was the direct cause of
Joseph Byars being struck and killed on said crossing,
then, if you believe plaintiff was the wife of the said
Joseph Byars, you will find for her unless you believe
from the evidence in this case that the defendant
sounded the whistle on said engine at intervals for a
space of eighty rods before reaching said crossing, and
unless you further believe said Joseph Byars was
guilty of negligence which contributed to his death;
and you are instructed that contributory negligence on

the part of Joseph Byars must be established by the greater weight of all the evidence in the case, and unless it be so established you cannot find for defendant on that ground.''

''2. If you believe from the evidence that Joseph Byars was in a vehicle with one Ed Carter, and that said Ed Carter had complete control of the vehicle and was controlling the movements and driving the same at and before the collision, and if you further believe from the evidence that Joseph Byars had no control over said vehicle or its movements, and that said Ed Carter was not in the employ of Joseph Byars or under his control, and if you further believe that Joseph Byars had no right or authority to control or direct the said Ed Carter, then you are instructed that plaintiff is not chargeable with the negligence, if any, of the said Ed Carter, and if from all the evidence you believe Joseph Byars acted as a reasonably prudent person under the circumstances and conditions surrounding him at the time the vehicle approached near and went upon said crossing, then you are not warranted in finding for defendant upon its plea of contributory negligence.''

At the instance of the defendant, the court gave instructions to the jury which included the following:

''2. The court instructs the jury that there is no evidence in this case that the said deceased Byars was under the control of the said Carter, or that he was dependent upon him, while riding in said wagon and the said deceased Byars was bound in approaching said crossing to watch out for himself for an approaching train, and if the said Byars saw, or by the exercise of ordinary care could have seen said train before going upon said track, and was thereby struck and killed, then, the plaintiff cannot recover, and your verdict will be for the defendant.''

The court modified certain other instructions offered by the defendant and gave them as modified.

These are mentioned in the opinion but it is unnecessary to set them forth at length.

CAULFIELD, J. (after stating the facts).—I. Defendant contends that, as a matter of law, under the record facts, plaintiff's husband, Joseph Byars, was himself guilty of negligence; hence the court erred in not sustaining a demurrer to the evidence. In this connection it conclusively appears that the driver, Carter, was not Byars' servant and Byars had no control over him or over the team. Byars was the mere guest of Carter. Whether Carter was negligent we do not at this time decide. If he was negligent, his negligence is not to be imputed to Byars as his guest or passenger. To hold that it was, "would be to abrogate a well-settled rule of the common law which gives a right of action for an injury resulting directly from the joint wrongful act of two wrong doers against either or both of such wrong doers," and "to make an innocent person answerable for the wrong act of another over whom he has and exercises no control, and who is neither his servant nor his agent." [Becke v. The Mo. Pac. Ry. Co., 102 Mo. 544, 549, 13 S. W. 1053; Stotler v. Railroad, 200 Mo. 107, 143, 98 S. W. 509.] The question, then, before us is whether Byars' conduct, in the particular circumstances in which he was placed as the guest of Carter, constituted contributory negligence on his part. The burden of proving that Byars was guilty of such contributory negligence was on the defendant, and in sustaining that burden defendant is confronted with the presumption, which the law indulges, that Byars did exercise due care. [Stotler v. Railroad, 200 Mo. 107, 146, 98 S. W. 509.] In order, then, to convict the trial court of error it must affirmatively and conclusively appear from the evidence that Byars himself was guilty of negligence, i. e., failed to act as an ordinarily prudent person would have acted for his own

safety in the circumstances of the case. [Connor v. Railroad, 149 Mo. App. 675, 689, 129 S. W. 777.] Now, what did Byars do as the wagon came to the point where he could see the engine coming? Defendant's witness, the fireman, testified that he looked and saw and appeared to call the driver's attention to the coming train when all were in a position of apparent safety. This disposes of the looking and listening doctrine. Byars did all the law required of him in that respect. The argument has advanced, then, to the point where it had advanced in the Stotler case, supra, when our Supreme Court said in language peculiarly appropriate at this juncture: "The case, then, has progressed to the point where fault can be found with plaintiff, if at all, not in her not looking and listening, in her not seeing and hearing the advancing train, but in the act of driving on the track immediately before that train. The act in question was not hers, but if she actively participated in that act, or is responsible therefor, she ought not to recover. If she did not actively participate therein, and is not responsible therefor, then there is no independent cause intervening between defendant's negligence and the injury, and that injury should be referred to defendant's negligence alone." Of course there is no pretense in this case that Byars actively participated in or sanctioned or was in any wise responsible for the act of driving on the track immediately before the train. According to the fireman's testimony, when Byars called the driver's attention to the coming train, the driver looked and then tried to hold the team, which by that time had gotten to going "a little bit faster." When the team was getting close to the track and Byars realized there was danger of them getting upon it, then he ran to the driver's assistance and tried to hold the team back off the track. He did this before the fireman realized they were coming up-

161 App.—45

on the track and called to the engineer to "stop her." We are of the opinion that this evidence is sufficient to sustain the jury's finding that Byars acted as a reasonably prudent man under the circumstances should have acted. There is no evidence in the case that he knew that the driver was inefficient or the team difficult to hold back, and he had a right to assume, until the contrary appeared, that the driver could and would avoid going upon the track. As soon as he realized there was danger of going upon the track, he made a quick effort to avoid it. It is true that what he did was not sufficient to avert the impending disaster. He might perhaps have made a quick jump from the wagon and thus escaped death at least; but his conduct in that respect is not to be measured with nicety without regard to the circumstances under which he acted. One is not chargeable with negligence because, when exposed to sudden danger, he does not adopt the safest and best course to avoid injury. [Dickson v. Omaha & St. Louis R. Co., 124 Mo. 140, 27 S. W. 476.] Whether the course adopted by him to free himself from the peril in which he was involved by the approaching train was such as a man of ordinary prudence might or would have adopted, was a question for the jury. [Donohue v. St. Louis, I. M. & S. R. Co., 91 Mo. 357, 3 S. W. 424, 2 S. W. 848.] We rule this assignment against the defendant.

II. Defendant complains that plaintiff's instruction No. 1 was erroneous because it was contrary to the evidence and not supported by the evidence, citing Schmidt v. Transit Co., 140 Mo. App. l. c. 187, 120 S. W. 96. We are not advised and have not discovered wherein this instruction is contrary to the evidence or what evidence in support of it is lacking, but we infer from the local citation given that the point intended to be made is, that there is no evidence in the case

that the failure to give the statutory signals was the proximate cause of Byars' death. In the Schmidt case this court said: "There is no presumption of law that because the car was running in violation of the ordinance, the plaintiff's injury resulted proximately therefrom. On the contrary, such is a matter of fact which must be established to a reasonable certainty by the evidence." Such would also be the rule as to failure to give the statutory signals, were it not that the effect of the statute (Section 3140, R. S. 1909) has been to change the law in this respect, so as to make a prima facie case by proof of the failure to give the signals, accompanied by an injury at the crossing. There need be no proof that the failure to give the signals caused the injury. The law supplies that proof and casts the burden upon the defendant to show that the failure to ring the bell was not the cause of the injury. [McNulty v. Railroad, 203 Mo. 475, 101 S. W. 1082.] This assignment of error is also ruled against the defendant.

III. Defendant next assigns as error the giving of plaintiff's instruction No. 2 on the ground that it was contrary to the evidence and was not supported by the evidence; and on the further ground that it was in direct conflict with defendant's instruction No. 2. Defendant makes no effort to point out wherein the plaintiff's instruction No. 2 is contrary to, or not supported by, the evidence, and it is clear to us that the instruction was not properly subject to the general criticism made of it. Every hypothesis submitted to the jury was supported by substantial evidence. Indeed, the evidence shows conclusively that the driver owned and had exclusive control of the team and Byars was his mere guest or passenger, and the evidence of the fireman was sufficient to support the hypothesis that Byars acted as a reasonably prudent person · under the circumstances. On the other hand,

defendant's instruction No. 2 was clearly erroneous in declaring Byars guilty of negligence as a matter of law from the bald and sole fact that the team went on the track after he saw or by the exercise of ordinary care could have seen the coming train. The conduct of a mere guest or passenger, without control over the driver's movements, is not to be measured by that strict rule. We discussed this sufficiently in connection with defendant's demurrer to the evidence. We hold, then, that plaintiff's instruction No. 2 was correct and properly given, while defendant's instruction No. 2 was incorrect and improperly given. It follows that defendant is estopped to claim reversible error resulting from the inconsistency of these two instructions, if there be any, having himself invited the error by asking and obtaining a wrong instruction. [Thompson v. Joseph W. Moon Buggy Co., 155 Mo. App. 597, 134 S. W. 1088; Christian v. Ins. Co., 143 Mo. 460, 45 S. W. 268.]

IV. The defendant offered four instructions, each of which declared or assumed as a matter of law that it was the duty of Byars when approaching the crossing to *stop*, look and listen for an approaching train. The court struck out the word "stop" before giving these instructions and the defendant assigns such action as error. The court was clearly right in such action. Whether a traveler, even the driver, or one in control of the movements of the vehicle, should stop in addition to looking and listening for the cars, is a question of fact for the jury, and not of law for the court. [Mayes v. St. L., K. & N. R. R. Co., 71 Mo. App. 140; Frank v. St. Louis Transit Co., 99 Mo. App. 323, 73 S. W. 239.] One of these instructions would have declared that "the testimony in this case shows that the defendant's employees in charge of said train made use of all the precautions of which they could make use under the circumstances to prevent the said

injury.'' Defendant assigns as error the action of the court in striking out said language before giving said instruction. There is no merit in this assignment. There is ample evidence that the employees could have taken the precaution to have rung the bell or blown the whistle as prescribed by statute and that they failed to do so.

Finding no error of which the defendant can justly complain, the judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.